**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1867

MARTIN P. SHEEHAN,

Trustee – Appellant,

and

U.S. TRUSTEE,

Trustee,

v.

KEITH DOYLE ASH; PHYLLIS JEAN ASH,

Debtors – Appellees.

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg. Irene M. Keeley, Senior District Judge. (1:16-cv-00109-IMK)

Argued: March 20, 2018                                        Decided: May 4, 2018

Before NIEMEYER and KING, Circuit Judges, and Leonie M. BRINKEMA, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Niemeyer and Judge Brinkema joined.

**ARGUED**: Martin Patrick Sheehan, SHEEHAN & NUGENT, PLLC, Wheeling, West Virginia, for Appellant. Eugene Robert Wedoff, Oak Park, Illinois, for Appellees. **ON**

**BRIEF**: Todd B. Johnson, JOHNSON LAW, PLLC, Morgantown, West Virginia, for Appellees.

_____

KING, Circuit Judge:

Martin P. Sheehan, as the bankruptcy trustee, appeals from the district court's affirmance of the bankruptcy court's ruling that denied Sheehan's objection to exemptions claimed by the debtors. *See Sheehan v. Ash*, No. 1:16-cv-109 (N.D.W. Va. June 27, 2017), ECF No. 25 (the "Opinion"). Sheehan maintains on appeal that the district court erred in deciding that the applicable bankruptcy statute authorized the debtors to utilize Louisiana's state law statutory scheme to exempt personal property in West Virginia from the debtors' bankruptcy estate. As explained below, we agree with the district court and affirm.

I.

This appeal arises from a Chapter 7 bankruptcy proceeding initiated by Keith and Phyllis Ash in July 2015 in the Northern District of West Virginia.[1] Their bankruptcy was complicated by the fact that the Ashes had recently changed their residence — moving from Louisiana to West Virginia in March 2015 — and owned property located in both states. The West Virginia property is in dispute here, and includes a checking account, two television sets, items of clothing, a wedding band, two firearms, and a well-

---

[1] In a Chapter 7 bankruptcy proceeding, debtors are permitted "to discharge their outstanding debts in exchange for liquidating their nonexempt assets and distributing them to their creditors." *See Janvey v. Romero*, 883 F.3d 406, 411 (4th Cir. 2018). The trustee collects and reduces to money the nonexempt assets of the bankruptcy estate for the benefit of creditors. *See* 11 U.S.C. § 704(a)(1).

3

used vehicle. *See* J.A. 96.[2] The total value of the debtors' property in West Virginia — subject to their claimed exemptions — is approximately $3,450. *Id.* To better understand Sheehan's appeal, a brief review of some pertinent legal provisions is warranted.

A.

In a Chapter 7 bankruptcy proceeding, the debtor's legal and equitable property interests become part of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1). When the bankruptcy estate is placed under the control of a trustee, he must "collect and reduce to money" the assets of the bankruptcy estate for the benefit of creditors. *Id.* § 704(a)(1). To prevent the debtor from becoming destitute, the debtor is entitled to exempt certain property from the bankruptcy estate. *See Clark v. Rameker*, 134 S. Ct. 2242, 2247 n.3 (2014). Those property exemptions can be derived from either federal or state law, and we are obliged to construe such exemption provisions "liberally in favor of the debtor and the exemption." *See In re Nguyen*, 211 F.3d 105, 110 (4th Cir. 2000).

Section 522(b)(1) of Title 11 empowers a debtor to choose between two statutory schemes for identifying bankruptcy exemptions, that is, a federal scheme described in § 522(d) or the applicable state scheme defined by state law.[3] The federal exemption

_____

[2] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed in this appeal.

[3] Section 522(b)(1) of Title 11 provides that "an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection." Paragraph (2) of § 522(b) directs the debtor to utilize the federal exemptions identified in § 522(d). *See* 11 U.S.C. § 522(b)(2). Paragraph (3) (Continued)

4

scheme entitles the debtor to exempt twelve categories of property from the bankruptcy estate. *See* 11 U.S.C. § 522(d). The state exemption scheme authorizes a debtor to identify exemptions pursuant to the applicable state or local law. *Id.* § 522(b)(3)(A). Importantly, a state can restrict its domiciliaries to the state exemption scheme by opting-out of the federal scheme. *Id.* § 522(b)(2) (enabling debtor to use federal exemption scheme "unless the State law that is applicable to the debtor . . . does not so authorize").

In claiming the applicable state exemptions, the debtor's domicile is determined by the provisions of § 522(b)(3)(A). Pursuant thereto, the debtor is directed to utilize the state scheme of the "place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the [bankruptcy] petition." *See* 11 U.S.C. § 522(b)(3)(A). If the debtor has not lived in a single location for the preceding 730 days, he must utilize the law of "the place in which [his] domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place." *Id.* Pursuant to an unnumbered paragraph — commonly called the "hanging" paragraph — contained in § 522(b)(3), if the foregoing domiciliary rules would "render the debtor ineligible for any exemption," the debtor may claim exemptions under the federal exemption scheme.[4] A debtor may be rendered

---

of § 522(b) authorizes the debtor to utilize those exemptions created by the "State or local law that is applicable on the date of the filing of the [bankruptcy] petition." *Id.* § 522(b)(3)(A).

[4] The hanging paragraph in 11 U.S.C. § 522(b)(3) has been the subject of some dispute in the bankruptcy courts. It provides that if "the effect of the domiciliary (Continued)

ineligible for any exemptions if his state-of-domicile has opted-out of the federal scheme and restricted the use of its local exemption statutes to in-state residents or in-state property.

The state in which the Ashes previously resided — Louisiana — has opted-out of the federal exemption scheme. *See* La. Rev. Stat. Ann. § 13:3881(B)(1). As a result, a Louisiana-domiciled bankruptcy debtor is obliged to utilize that state's exemption statutes. Unlike certain other states that have opted out of the federal exemption scheme, Louisiana does not restrict the application of its exemption statutes to in-state residents or property. *Id.* Put another way, a former Louisiana resident is ostensibly permitted to utilize Louisiana's exemption scheme to protect property located in another state, such as in West Virginia. The propriety of such a so-called "extraterritorial application" of state law underlies this appeal.

B.

When the Ashes filed their bankruptcy petition in the Northern District of West Virginia, they submitted a bankruptcy form called a Schedule C, which identified their

---

requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property" pursuant to the federal exemption scheme. *See* 11 U.S.C. § 522(b)(3). Some courts have concluded that the benefit of the hanging paragraph is only available to those debtors who are entirely ineligible for state exemptions, while other courts have permitted debtors to invoke the hanging paragraph if they are ineligible for some but not all state exemptions. *Compare In re Wilson*, No. 14-20557 (Bankr. D. Idaho Jan. 13, 2015), ECF No. 51, *with In re Kelsey*, 477 B.R. 870, 874-88 (Bankr. M.D. Fla. 2012). Because the Ashes have not claimed exemptions under the hanging paragraph, we need not enter that debate.

claims to exempt property. The Ashes were asked on their Schedule C to specify whether they would utilize the federal exemption scheme or a comparable state scheme. They selected the state exemption scheme, seeking to apply the state law of Louisiana and claiming exemptions for property located in both West Virginia and Louisiana. *See* J.A. 31.[5]

In September 2015, Sheehan — as the trustee — filed his objection to the Ashes' bankruptcy petition, seeking to bar application of the Louisiana exemption scheme to the Ashes' property in West Virginia. Sheehan conceded, however, that the Ashes could utilize the Louisiana exemption scheme for their property in Louisiana. On May 24, 2016, the bankruptcy court overruled Sheehan's objection, concluding that the federal bankruptcy statutes authorized the exemptions claimed by the Ashes. *See* J.A. 102. Sheehan appealed that ruling to the district court.

In his appeal to the district court, Sheehan argued that traditional limits on state sovereignty bar Louisiana from enacting a law that exempts property located in another state from being included in a bankruptcy estate. In advancing that contention, Sheehan acknowledged that almost all the courts that have addressed the issue have ruled against the proposition he pursues. *See, e.g.*, *In re Arrol*, 170 F.3d 934 (9th Cir. 1999) (ruling that recently relocated debtor was entitled to utilize homestead exemption laws of

---

[5] Because the Ashes had not lived in West Virginia for the 730 days immediately preceding their bankruptcy filing, they were required, pursuant to 11 U.S.C. § 522(b)(3)(A), to designate Louisiana as their domicile for exemption purposes. The Ashes thus looked to the state where they had lived for the "180 days immediately preceding the 730-day period," i.e., Louisiana. *See* 11 U.S.C. § 522(b)(3)(A).

7

California, his former domicile, to exempt property located in Michigan, where he lived); *In re Jevne*, 387 B.R. 301, 305-06 (Bankr. S.D. Fla. 2008) (concluding that recently relocated debtor could utilize homestead exemption of Rhode Island, his former domicile, to claim exemption for property located in Florida, where he then resided). Sheehan argued to the district court that those adverse decisions were distinguishable and, in any event, wrongly decided. More specifically, he maintained that those decisions contravene the "presumption against extraterritoriality" recognized by the Supreme Court in a non-bankruptcy setting. *See Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115-17 (2013) (explaining that, in an alien tort case, "when a statute gives no clear indication of an extraterritorial application, it has none" (citations omitted)). Sheehan thus asked the district court to overrule the bankruptcy court and apply a presumption against extraterritorial application to the Ashes' exemption claims with respect to their West Virginia property.

On June 27, 2017, the district court Opinion that underlies this appeal rejected Sheehan's appeal from the bankruptcy court. As recognized therein, several federal courts have addressed the proposition sponsored by Sheehan, and the overwhelming majority of those courts have rejected it. The majority approach — which the district court approved and called the "state-specific" approach — is that a "state's exemption laws may be used by out-of-state debtors for out-of-state property to the extent that each state's exemption law permits." *See* Opinion 21 (quoting *In re Fernandez*, No. 11-cv-123, slip op. at 20 (W.D. Tex. Aug. 5, 2011), ECF No. 9). Thus, when a state exemption scheme does not "explicitly limit the use of the exemptions to in-state residents or to in-

8

state property," it is permissible to apply the state scheme to the debtor's property "wherever located." *Id.* (citation omitted). Consistent with its approval of the state-specific approach, the court concluded that the Ashes had properly utilized Louisiana law to exempt their West Virginia property. *Id.* at 28.

## II.

### A.

Having been unsuccessful in his appeal to the district court, Sheehan has now appealed to our Court. We review de novo a district court's disposition of an appeal from a bankruptcy court, applying the standard of review applied in the district court. *See In re Litton*, 330 F.3d 636, 642 (4th Cir. 2003). With that de novo standard in mind, we turn to an assessment of Sheehan's appeal to this Court.

### B.

Put simply, we agree with the well-reasoned analysis of the district court. In its comprehensive Opinion, the court characterized the issue as, "when Congress [pursuant to 11 U.S.C. § 522(b)(3)(A)] directed particular debtors to exempt property according to the law of their prior domicile, how did it intend for that state's law to apply?" *See* Opinion 9-10. The courts that have assessed that issue have identified three potential interpretations of § 522(b)(3)(A), which the district court's Opinion denominated as (1) the "anti-extraterritoriality" approach, (2) the "preemption" approach, and (3) the "state-specific" approach. *Id.* at 12.

The Opinion then carefully evaluated each of those approaches to the issue. Sheehan advocated the anti-extraterritoriality approach, under which "bankruptcy courts may not give extraterritorial effect to any state's exemption laws." *See* Opinion 12 (citations omitted). In other words, if a debtor claims exemptions under the laws of a former domicile, "the bankruptcy court should apply them as if it were a state court of the forum state where the bankruptcy court were located." *Id.* (citations omitted). The Opinion readily rejected that approach, however, explaining that Sheehan's interpretation of § 522(b)(3)(A) would lead to nonsensical results. *Id.* at 12-20. For example, the Opinion emphasized that the anti-extraterritoriality approach would nullify a substantial portion of the federal exemption statute, explaining that

> selecting the appropriate law under § 522(b)(3)(A) would be a fruitless exercise for most relocated debtors to whom the selection applies. Such debtors likely have no property in their prior domicile, would be categorically ineligible for its exemptions, and would take advantage of the hanging paragraph. Had Congress intended this result, it simply could have directed application of the [federal exemption scheme].

*Id.* at 14. The district court observed that only one bankruptcy court in the entire country has ever adopted and applied the anti-extraterritoriality approach. And that bankruptcy court was promptly overturned on appeal. *Id.* at 12-15 (citing *In re Fernandez*, 445 B.R. 790 (Bankr. W.D. Tex. 2011), *rev'd*, No. 11-cv-123 (W.D. Tex. Aug. 5, 2011), ECF No. 9).

The district court then considered and rejected a second minority view concerning the issue, which it called the preemption approach, i.e., that "a state's exemption laws may be applied to non-residents and to out-of-state property, regardless of whether that

state's laws allow for such extraterritorial effect or not." *See* Opinion 24 (citation omitted). As the Opinion emphasized, if Congress had intended to override state laws limiting the use of exemption schemes to in-state residents or in-state property, it would not have placed the hanging paragraph in § 522(b)(3). *Id.* at 27 (citing *In re Long*, 470 B.R. 186, 190 (D. Kan. 2012) ("If preemption were intended, nearly everyone who resided in any state or territory for more than 90 days before the commencement of the 730-day period would be able to claim the exemptions of that state. No one other than people who had been domiciled in foreign countries would need the [hanging paragraph].")).

Finally, the Opinion turned to the majority approach — the state-specific interpretation of § 522(b)(3)(A) sponsored by the Ashes — and ruled that the bankruptcy court had correctly adopted that approach. In the district court's view, the state-specific approach "best embodies congressional intent," in that it treats § 522(b)(3)(A) as a "straightforward . . . choice-of-law provision." *See* Opinion 12, 21. That approach also comports with the established principle that bankruptcy exemptions are entitled to the most liberal construction in favor of the debtor. *Id.* at 22 (citing *In re Nguyen*, 211 F.3d 105, 110 (4th Cir. 2000)). Notably, the Opinion observed that Sheehan was unable to identify any Louisiana legal principles that would bar out-of-state debtors, such as the Ashes, from utilizing its exemption statutes. *Id.* at 23.

## C.

The district court's adoption of the state-specific approach is consistent with the rulings of at least two of our sister appellate courts that have addressed the issue. For

11

example, the Ninth Circuit in 1999 was tasked with assessing whether California's homestead exemption statute applied — pursuant to § 522(b) — to the Michigan residence of a debtor who had moved there shortly before filing for bankruptcy. *See In re Arrol*, 170 F.3d 934 (1999). The Ninth Circuit ruled that California's exemption statute applied extraterritorially because California law did not limit its exemptions to in-state property. *Id.* at 937 ("We find nothing in the California exemption statutory scheme, its legislative history, or its interpretation in California case law to limit the application of the homestead exemption to dwellings within California.").

In 2005, the Eighth Circuit reached the very same conclusion. *See In re Drenttel*, 403 F.3d 611 (8th Cir. 2005). There, the court of appeals ruled that Minnesota's exemption statute applied to a debtor's property that was located in Arizona because "[t]he statute itself does not preclude use of the homestead exemption for an out-of-state property." *Id.* at 615. The Eighth Circuit reasoned that "[p]ermitting the exemption of the Arizona homestead is consistent with the general rule of liberal construction in favor of the debtor, and furthers the Minnesota policies underlying the exemption." *Id.*[6]

---

[6] Notably, *Arrol* and *Drenttel* are leading decisions that have adopted the strong majority view on the issue identified by the district court. In 2011, a Texas district court identified approximately forty federal court decisions that had addressed whether a bankruptcy debtor could apply a state's exemption statutes extraterritorially to exempt property located in another state. *See In re Fernandez*, No. 11-cv-123, slip op. at 21 & n.3 (W.D. Tex. Aug. 5, 2011), ECF No. 9 (collecting cases). That court related that thirty-six of those decisions approved the state-specific approach. *Id.* As it explained, the state-specific approach was "not merely the majority position, but the majority position by a considerable margin." *Id*. at 21.

Sheehan offers no sound reason for us to reject the majority approach adopted by the district court. Indeed, his principal justification is simply that the other courts would not have adopted the state-specific approach had they properly assessed the presumption against extraterritoriality. Our review of the primary authority relied upon by Sheehan for that proposition — the Supreme Court's ruling in *Kiobel v. Royal Dutch Petroleum Co.* — undermines that contention. *See* 569 U.S. 108 (2011).

In *Kiobel*, the Supreme Court evaluated whether Nigerian nationals residing in the United States could sue Dutch, British, and Nigerian corporations — under the Alien Tort Statute ("ATS") — for acts committed in Nigeria. *See* 569 U.S. at 111. The ATS provides for original jurisdiction in the federal courts over a civil action "by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." *See* 28 U.S.C. § 1350. In assessing the ATS, the Court referred to the presumption against extraterritoriality, recognizing that it has traditionally been applied to "discern whether an Act of Congress regulating conduct applies abroad." *See Kiobel*, 569 U.S. at 116. As the Chief Justice explained, that presumption thus "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *Id.* (quoting *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) (*Aramco*)). The *Kiobel* majority further recognized that the presumption ensures that a federal court will not "erroneously adopt an interpretation of U.S. law that carries foreign policy consequences not clearly intended by the political branches." *Id.* (quoting *Aramco*, 499 U.S. at 248).

Sheehan has argued — in both the bankruptcy and district courts, and again in this appeal — that the presumption against extraterritoriality applies in bankruptcy proceedings because the fifty states are sufficiently analogous to international sovereigns. *See* Opinion 17. The district court readily rejected that argument, however, explaining that the presumption against extraterritoriality "remains a canon of construction confined to the international context" and has never been invoked for "wholly domestic affairs" such as the Ashes' bankruptcy proceeding. *Id.* That aspect of the Opinion was entirely consistent with our pre-*Kiobel* precedent concerning the presumption against extraterritoriality. As we explained in connection with a 2006 bankruptcy proceeding called *In re French*, the presumption against extraterritoriality "has no bearing when the conduct which Congress seeks to regulate occurs largely within the United States." *See* 440 F.3d 145, 149 (4th Cir. 2006) (internal quotations omitted).

Finally, there is nothing that prevents Congress from adopting a state's law as its own. *See United States v. Sharpnack*, 355 U.S. 286, 293-95 (1958) (explaining that Congress may adopt state law as its own, either explicitly or by reference). In these circumstances, we are satisfied to reject Sheehan's position and adhere to that of the district court.

## III.

Pursuant to the foregoing, we are satisfied to agree with the carefully crafted Opinion of the district court and affirm its judgment.

*AFFIRMED*