**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-2294

PAIGE MARTINEAU,

Plaintiff - Appellant,

v.

JOEL WIER; DIANE WIER; RICHARD GUEST,

Defendants - Appellees.

Appeal from the United States District Court for the District of South Carolina, at Columbia. Margaret B. Seymour, Senior District Judge. (3:16-cv-02650-MBS)

Argued: May 8, 2019                                       Decided: August 12, 2019

Before NIEMEYER and HARRIS, Circuit Judges, and Ellen L. HOLLANDER, United States District Judge for the District of Maryland, sitting by designation.

Vacated and remanded by published opinion. Judge Harris wrote the opinion, in which Judge Niemeyer and Judge Hollander joined.

**ARGUED:** Matthew James Greer, WILLIAMS & CONNOLLY, LLP, Washington, D.C., for Appellant. Bess J. DuRant, SOWELL & DURANT, LLC, Columbia, South Carolina, for Appellees. **ON BRIEF:** Thornwell F. Sowell, SOWELL & DURANT, LLC, Columbia, South Carolina, for Appellees.

PAMELA HARRIS, Circuit Judge:

Years after entering into a settlement that released certain tort claims, Paige Martineau filed for Chapter 7 bankruptcy. After her debts were discharged and the bankruptcy proceedings closed, Martineau brought this case in federal district court, seeking to rescind her settlement agreement as fraudulently induced and to pursue a tort action.

The district court rejected that effort and entered judgment in favor of the defendants. First, the district court held, Martineau lacked standing because her tort claims were the property of her bankruptcy estate when she filed this action. And in any event, the court found, judicial estoppel precluded Martineau's suit: Because Martineau had not disclosed her future legal claims when she filed for bankruptcy, the court reasoned, she had effectively disavowed them, and could not now take a contrary position.

We come to a different conclusion. The district court's "standing" determination conflates Article III requirements with the distinct real-party-in-interest analysis; when the two are untangled, it becomes clear that Martineau has both Article III standing and the legal entitlement to pursue these tort claims on her own behalf. With respect to judicial estoppel, the district court relied on an improper presumption of bad faith, short-circuiting the necessary inquiry. Accordingly, we remand so that the district court may evaluate the appropriateness of judicial estoppel in light of all facts and circumstances without recourse to a presumption of bad faith.

## I.

## A.

Martineau's underlying tort claims stem from a grisly attack on her by defendant Richard Guest on October 13, 2009. Martineau encountered Guest outside of Guest's apartment, while visiting her boyfriend in the same building. According to the police report, Guest stabbed Martineau repeatedly with an eight-to-ten-inch kitchen knife in an unprovoked assault. The police arrested Guest, who was charged with assault and battery with intent to kill and kidnapping. Guest was found incompetent to stand trial, however, and civilly committed to a mental health facility.

In the years that followed, Martineau retained counsel to investigate potential claims against Guest and co-defendants Diane and Joel Wier, Guest's sister and brother-in-law and the owners of the apartment building in question. According to Martineau, the Wiers assured her that the only relationship they had with Guest was as landlords, and that they had no reason to know of his severe mental illness or potential dangerousness. Relying on those representations, Martineau alleges, she concluded that the Wiers could not be held liable for negligence in connection with Guest's attack on her. As a result, Martineau, still represented by counsel, agreed in October of 2012 to release all claims against the Wiers and Guest in exchange for $20,000 – a sum that she contends represents only a fraction of her damages.

Roughly a year later, in December of 2013, prosecutors in Guest's criminal case gave Martineau access to Guest's criminal file for the first time. It was at that point, Martineau alleges, that she learned that the Wiers in fact had ample knowledge of Guest's

long history of mental illness and propensity for violence. According to Martineau, Diane had attempted to have Guest involuntarily committed years earlier; she was the trustee of a long-standing mental health trust established because Guest was incompetent to manage funds; and the Wiers had discovered poems by Guest describing bloody stabbings. Despite these revelations, Martineau took no legal action, believing that her settlement agreement barred her from proceeding against the Wiers or Guest.

**B.**

In June of 2015, eighteen months after reviewing Guest's criminal file, Martineau, now proceeding without counsel, filed for Chapter 7 bankruptcy. When a debtor files for Chapter 7 bankruptcy, her assets immediately are transferred to the bankruptcy estate. *See* 11 U.S.C. § 541(a). A Chapter 7 bankruptcy trustee liquidates that property and distributes the proceeds to the debtor's creditors. *Id.* §§ 704(a)(1), 726. The estate does not include, however, wages earned or assets acquired after the debtor files for bankruptcy. *See id.* § 541(a)(1). A Chapter 7 debtor thus gains a "clean break" from her financial struggles, "but at a steep price: prompt liquidation of the debtor's assets." *Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015).

To facilitate this process, a Chapter 7 debtor must disclose to the bankruptcy court those assets which now belong to the estate, 11 U.S.C. § 521(a), including "all legal [and] equitable interests of the debtor," *id*. § 541(a). Courts "uniformly" interpret this statutory language to include causes of action. *In re Bogdan*, 414 F.3d 507, 512 (4th Cir. 2005) (internal quotation marks omitted). And indeed, Martineau's disclosures listed a pending

4

suit she had against her then-landlord. Those disclosures did not, however, mention any potential future claims against Guest and the Wiers.

The bankruptcy court appointed a trustee to oversee the distribution of assets within Martineau's estate. In carrying out that responsibility, a trustee need not pursue all claims, and instead may "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). That includes legal claims deemed to be "worthless or low value." *Biesek v. Soo Line R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006). Here, the trustee abandoned any interest in Martineau's assets, including her lawsuit against her landlord. In October of 2015, the bankruptcy court discharged Martineau's debt and closed her case.

## C.

### 1.

Martineau filed this suit in federal district court in July of 2016, almost a year after her bankruptcy proceedings concluded. In her complaint, Martineau sought to rescind her 2009 settlement agreement as fraudulently induced. She also asserted a series of tort-based claims against Guest and the Wiers, arising from Guest's assault on her and the Wiers' alleged negligence in allowing Guest to live unsupervised in their apartment complex.

The defendants moved to dismiss Martineau's case on numerous grounds. As relevant here, they contended that Martineau lacked "standing" to pursue the tort claims against them because those claims belonged to her bankruptcy estate and could be asserted only by the bankruptcy trustee. In response, Martineau petitioned the

5

bankruptcy court to reopen her proceedings and filed amended bankruptcy schedules that listed her claims against Guest and the Wiers. The bankruptcy court granted Martineau's motion and appointed a trustee to administer the newly disclosed claims. In February of 2017, that trustee abandoned any interest in Martineau's legal claims. The bankruptcy court closed Martineau's case for the second time without taking further action.

While Martineau was before the bankruptcy court, the defendants raised an additional defense related to the bankruptcy proceedings: Because Martineau had failed to disclose her tort claims against them in her initial bankruptcy filings, the defendants argued, judicial estoppel barred her from asserting them now. Judicial estoppel, the defendants explained, is an equitable principle that precludes a party from taking inconsistent positions in judicial proceedings. Martineau's original filings amounted to a declaration that she had no claims against them, the defendants contended, and that position necessarily was inconsistent with the pursuit of her claims in this action.

2.

The magistrate judge assigned to the case converted the defendants' motion to dismiss into a motion for summary judgment, and recommended finding for the defendants on both standing and judicial estoppel grounds.

On standing, the magistrate judge agreed with the defendants that Martineau's claims against them became the property of the estate when Martineau filed for bankruptcy, giving the bankruptcy trustee "exclusive standing" to pursue them. J.A. 241. The magistrate judge acknowledged that Martineau regained the right to pursue her claims on her own behalf when the second bankruptcy trustee abandoned them in

6

February of 2017.[1]  But that did not matter, the magistrate judge reasoned, because "standing is measured at the time the complaint is filed" – here, in July of 2016, when Martineau filed this action and before the claims were abandoned.  J.A. 243.

The magistrate judge also agreed with the defendants that the doctrine of judicial estoppel independently precluded Martineau's suit.  Judicial estoppel, the magistrate judge explained, "prevent[s] litigants from taking contrary positions in court filings" and thus "protect[s] the essential integrity of the judicial process."  J.A. 242 (internal quotation marks omitted).  The magistrate judge recognized that judicial estoppel does not apply when inconsistent positions are the result of inadvertence or a "good faith mistake."  J.A. 243.  And Martineau was arguing just that:  According to Martineau, she inadvertently omitted her as-yet-unfiled legal claims against the defendants from her June 2015 bankruptcy disclosures because she believed at the time that her settlement agreement would bar any legal action.

To resolve this issue, the magistrate judge applied a bankruptcy-specific presumption first suggested by the Fifth Circuit in *In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999).  Under that presumption, as the magistrate judge explained, "a debtor's failure to satisfy her statutory disclosure duty is inadvertent 'only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for

---

[1] The magistrate's report indicated that Martineau's claims were exempted – meaning that they were shielded from creditors – when in fact they were abandoned. *See Sheehan v. Ash*, 889 F.3d 171, 173 (4th Cir. 2018).  For purposes of this case, exemption and abandonment have the same legal effect – both returning the claims to Martineau – and so this point has no bearing on the appeal.

their concealment.'" J.A. 243 (quoting *In re Coastal Plains*, 179 F.3d at 210); *see also Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1157–58 (10th Cir. 2007) (collecting cases applying this rule). A motive for concealment, in turn, may be "inferred," because nondisclosure benefits a debtor by "den[ying] creditors potential assets." J.A. 244; *see also* 11 U.S.C. §§ 704, 726. That narrowed the magistrate judge's judicial estoppel analysis to just one question: Did Martineau have knowledge of her tort claims against the defendants at the time of her bankruptcy filing in June of 2015? The answer, the magistrate concluded, was yes, because "all that is required is a showing that [Martineau] knew of the factual basis of the undisclosed claim," and Martineau was allowed access to Guest's criminal record – the documents giving rise to her action – in December of 2013. J.A. 243. And even on Martineau's account, the magistrate judge finished, she knew of her legal claims by no later than the summer of 2016, when she filed suit, and still failed to amend her bankruptcy filings until November of that year, after the defendants moved to dismiss her action.

The district court adopted the magistrate judge's report and recommendation over Martineau's objections, awarding summary judgment to the defendants. On standing, the district court summarized and incorporated the magistrate judge's reasoning, concluding that "the bankruptcy trustee alone had exclusive standing to pursue this action at the time [Martineau] filed her complaint." J.A. 299. The court likewise endorsed the magistrate's reasoning with respect to judicial estoppel: To establish that Martineau's 2015 nondisclosure of her tort claims was not inadvertent, it was enough that Martineau at that time had "knowledge of the undisclosed claims" – in the form of access to the relevant

8

documents in December of 2013 – and "motive for concealment of the claims" – consistent with the presumption identified by the magistrate judge. J.A. 302.

Martineau filed a motion for reconsideration, which the district court denied. This timely appeal followed.

## II.

On appeal, we review de novo the district court's determination that Martineau lacks standing to bring this action. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 342 (4th Cir. 2013). The district court's reliance on judicial estoppel is reviewed for abuse of discretion, *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 457 (4th Cir. 2017), which "by definition" includes an error of law, *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 150 (4th Cir. 2002).

Martineau argues that the district court erred in holding that she lacks standing to bring her claims, and that the court improperly applied a presumption of bad faith – and thus made an error of law – when it found that judicial estoppel precluded her from proceeding. We agree on both counts.

## A.

We begin with the district court's finding that Martineau lacked standing to bring the current action.[2] As noted above, the district court reached this conclusion by

---

[2] Although the district court styled its standing-based holding as a grant of summary judgment to the defendants, ordinarily courts who find no Article III standing dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. *See Abbott v.*

adopting the magistrate's recommendation that "the bankruptcy trustee alone had exclusive standing to pursue this action at the time [Martineau] filed her complaint." J.A. 299. This was so, the magistrate judge reasoned, because when Martineau filed for bankruptcy in June of 2015, her potential claims against the Wiers and Guest became assets that belonged to the bankruptcy estate. Although those claims later were abandoned by the bankruptcy trustee and reverted to Martineau, that did not happen until 2017, well after Martineau filed this action, and courts "have an obligation to assure [themselves] . . . [of] Article III standing at the outset of the litigation." J.A. 241 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)).

The problem with this analysis is that it conflates Article III standing with the distinct issue of whether Martineau or her bankruptcy trustee was the "real party in interest," legally entitled to pursue these claims. There is no question in this case that Martineau's allegations satisfy the Article III requirements for standing: Martineau's complaint alleges a distinct injury at the hands of Guest and the Wiers, traceable to their conduct, and redressable by a favorable decision on her tort claims. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (describing "'irreducible constitutional minimum'

*Pastides*, 900 F.3d 160, 175 n.8 (4th Cir. 2018). Accordingly, we assume that the district court intended to dismiss the case under Rule 12(b)(1) for lack of standing, and that its grant of summary judgment captured its alternative judicial estoppel holding. *See id.* ("Because we are not bound by the label placed on the district court's disposition of the case, we may treat the district court's summary judgment ruling as a dismissal under Rule 12(b)(1)." (internal quotation marks and alterations omitted)).

of standing" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992))). Indeed, neither the magistrate judge nor the district court applied that familiar three-part standard to Martineau's allegations and found them wanting.

Instead, the question in this case – on which the magistrate judge and district court did focus – is whether Martineau was legally entitled to pursue these tort claims on her own behalf, or whether the claims belonged solely to her estate. That question implicates not Article III standing doctrine, but rather the "real-party-in-interest" requirement. *See Wilson*, 717 F.3d at 342–43 (treating question of whether debtor or bankruptcy trustee is entitled to maintain action for tax refund as one of real party in interest). Under Rule 17 of the Federal Rules of Civil Procedure, "an action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). And in the context of a Chapter 7 bankruptcy, it is the bankruptcy trustee and not the debtor who is the real party in interest with respect to property of the estate, with the right to bring any legal claims that belong to the estate. *Wilson*, 717 F.3d at 343.[3]

---

[3] We have on occasion referred to this real-party-in-interest question as one of "standing." *See* J.A. 240 (quoting *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999)). But in that context, the reference is not to Article III standing – the basis for the district court's jurisdictional holding – but to prudential standing, reflecting courts' tendency to use the terms prudential standing and real party in interest interchangeably when discussing a bankruptcy trustee's sole authority to take action on legal claims that belong to the estate. *See Wilson*, 717 F.3d at 342–43 (collecting cases). Our opinion in *Wilson* clarified that in this circuit, we address the issue under the real-party-in-interest framework. *See id.* In any event, treating it as one of prudential standing would make no difference here; issues of prudential standing are non-jurisdictional and may be cured after an action is filed. *See United States v. Day*, 700 F.3d 713, 721 (4th Cir. 2012). And as we explain below, the bankruptcy trustee's

11

Martineau concedes that when she filed this suit in July of 2016, her tort claims against the defendants belonged to the bankruptcy estate,[4] making the bankruptcy trustee the real party in interest. The district court and magistrate judge deemed that fact dispositive: Because courts must assure themselves of "Article III standing at the outset of the litigation," J.A. 241 (internal quotation marks omitted), all that mattered was that on the date suit was filed, the bankruptcy trustee and not Martineau had the right to pursue these tort claims. But there is no analogous rule for the real-party-in-interest requirement. To the contrary, Rule 17 makes clear that circumstances on the date of filing do *not* control, prohibiting courts from dismissing a complaint on real-party-in-interest grounds without first providing the real party in interest with the opportunity to

abandonment of Martineau's claims against the defendants did just that, curing any defect in Martineau's right to bring this suit.

[4] We note that the case law on this point is not as clear as the parties' litigating positions suggest. For its conclusion that Martineau's as-yet-unfiled legal claims against the defendants belonged to the estate (and thus were subject to disclosure), the district court relied principally on an unpublished district court decision. *See* J.A. 301 (quoting *Vanderheyden v. Peninsula Airport Comm'n*, No. 4:12CV46, 2013 WL 30065, at *8 (E.D. Va. Jan. 2, 2013)). But that decision – like others relied on by the magistrate judge and district court – involved circumstances in which a debtor already had taken substantial steps toward legal action when he filed for bankruptcy. *See Vanderheyden*, 2013 WL 30065, at *2 (debtor failed to disclose charges filed with EEOC); *see also Robertson v. Flowers Baking Co. of Lynchburg*, No. 6:11-CV-00013, 2012 WL 830097, at *2 (W.D. Va. Mar. 6, 2012) (same); *Thomas v. Palmetto Mgmt. Servs.*, No. CA 305-17-CMC-BM, 2006 WL 2623917, at *4 (D.S.C. Sept. 11, 2006) (same). This case is different; at the time Martineau filed for bankruptcy, she had taken no steps preparatory to filing suit and, on her own account at least, believed that she was precluded by her settlement agreement from doing so. We have found no authority requiring a debtor to disclose, as an asset of the estate, a hypothetical legal claim that she does not believe exists. But the parties agree that Martineau's tort claims against the defendants belonged to the bankruptcy estate when she filed suit, so we need not resolve that issue here.

12

"ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). Because the district court miscategorized this question as one of constitutional standing, it improperly limited its focus to whether Martineau had the right to sue at the time of filing.

And this was a critical error, because events that transpired after the date of Martineau's filing made Martineau, and not the bankruptcy trustee, the real party in interest under Rule 17, legally entitled to pursue her tort claims on her own behalf. In February of 2017 – after Martineau filed suit but before the rulings in this case – the bankruptcy trustee in Martineau's reopened bankruptcy proceedings abandoned Martineau's legal claims against the defendants, bringing them outside the bankruptcy estate. *See Biesek*, 440 F.3d at 413 (bankruptcy trustee "may abandon worthless or low value assets, including legal claims"). That made Martineau the real party in interest, with the right to bring the claims on her own. *See id.* (if trustee abandons legal claim, debtor may "prosecute[] the suit in his own name"); *Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1988) ("[B]efore the debtor or a creditor may pursue a claim, there must be a judicial determination that the trustee in bankruptcy has abandoned the claim."). Indeed, once the trustee abandoned the claims against the defendants, bankruptcy law treats Martineau as "having owned [the claims] continuously" – not only as of February 2017, but at all points prior, as well – "free to seek redress as if no bankruptcy petition had been filed" at all. *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 791 (D.C. Cir. 2010) (quoting *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 617 (7th Cir. 2002)); *see also Biesek*, 440 F.3d at 413.

Accordingly, we reverse the district court's determination that Martineau lacked standing to pursue her tort claims against the defendants. Under the correct analytical framework, Martineau is now – and has been from the start – the real party in interest, legally entitled to bring this action.

**B.**

We turn now to the district court's alternative holding: that judicial estoppel bars Martineau from proceeding on her claims. Because the district court reached that conclusion without fully engaging in the necessary inquiry, we vacate the district court's grant of summary judgment and remand for further analysis.

1.

As the Supreme Court has explained, judicial estoppel is an equitable doctrine, designed to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (internal quotation marks omitted). Typically, judicial estoppel is reserved for cases where the party to be estopped – here, Martineau – has taken a later position that is "clearly inconsistent" with her earlier one; has persuaded a court to adopt the earlier position, creating a perception that "either the first or the second court was misled"; and would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51 (internal quotation marks omitted). Finally, and central to this case, there is the longstanding principle that judicial estoppel applies only when "the party who is alleged to be estopped *intentionally* misled the court to gain unfair advantage," and not when "a party's prior

14

position was based on inadvertence or mistake." *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995) (emphasis added) (internal quotation marks omitted); *accord New Hampshire*, 532 U.S. at 753 (quoting *John S. Clark*, 65 F.3d at 29).

The dispute between the parties here focuses primarily on this final factor. Martineau contends that she did not intentionally or deliberately change positions. Instead, she argues, her initial failure to list her legal claims against the defendants in her bankruptcy filings – at a time when she had done nothing to pursue those claims, believing them to be barred by her settlement agreement – was a matter of "inadvertence or mistake," *John S. Clark*, 65 F.3d at 29. The district court found to the contrary, according to Martineau, only by relying on a presumption of bad faith that this court never has endorsed. We agree, and find that the district court improperly applied a presumption of bad faith that is at odds with our case law and with the very nature of judicial estoppel.

Under the presumption in question, as the magistrate judge explained, a debtor who fails to disclose a legal claim in bankruptcy proceedings (as Martineau concedes she did here) is presumed to have acted in bad faith unless she "either lacks knowledge of the undisclosed claims or has no motive for their concealment." J.A. 243 (internal quotation marks omitted). Because debtors always have a motive to conceal – disclosure shifts assets from the debtor to her creditors – the inquiry effectively reduces to the question of knowledge. *See* J.A. 297 (Martineau "had motive to conceal the claims because disclosure would provide her creditors with a potential asset"). As applied here, that means that so long as a debtor has knowledge of the facts that someday will underlie a

15

future legal claim, it may be inferred that she failed to disclose that claim in a deliberate and bad-faith effort to mislead the courts.

But the nature of the judicial estoppel inquiry does not lend itself to this kind of blanket presumption. Whether the equitable doctrine of judicial estoppel should be invoked depends on the "specific factual context[]" of a case, rather than "any general formulation" or "inflexible" rule or standard. *New Hampshire*, 532 U.S. at 750–51 (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982)). For that reason, it has long been the law of this circuit that a court must consider each case's "specific facts and circumstances" before holding a claim barred by judicial estoppel. *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1988).

We do not think this understanding of judicial estoppel can be reconciled with the broad presumption of bad faith applied by the district court here. The district court, of course, did not invent the presumption it applied; instead, it relied on the Fifth Circuit's decision in *In re Coastal Plains* for the presumption, *see* J.A. 243 (quoting *In re Coastal Plains*, 179 F.3d at 210), and it appears that the Tenth Circuit has adopted a similar rule, *see Eastman*, 493 F.3d at 1157–59. But this court never has endorsed such a presumption. And we note that the last two circuit courts to consider the presumption both have rejected it in thoroughly reasoned opinions. *See Slater v. United States Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017) (en banc); *Ah Quin v. Cty. of Kauai Dep't of*

16

*Transp.*, 733 F.3d 267 (9th Cir. 2013) (rejecting presumption where debtor reopened bankruptcy proceedings and corrected initial nondisclosure).[5]

As the en banc Eleventh Circuit held, the "equitable principles that undergird" judicial estoppel require that it be invoked only after a court has considered "all the facts and circumstances of the particular case" – an inquiry that is incompatible with a "one-size-fits-all" presumption. *Slater*, 871 F.3d at 1185–86. A full and fact-specific analysis, the court reasoned, ensures that judicial estoppel applies "only when a party acted with a sufficiently culpable mental state" in failing to disclose a legal claim in bankruptcy proceedings. *Id.* Likewise, it permits courts to consider any subsequent bankruptcy proceedings, "arguably a better way to ensure that the integrity of the bankruptcy court is protected." *Id.* at 1186. Finally, "limiting judicial estoppel to those cases in which the facts and circumstances warrant it" helps to "reduce the risk that [its] application . . . will give the civil defendant a windfall." *Id.*

The district court's approach in this case bears out each of those concerns. First, by focusing exclusively on whether Martineau knew of the factual basis for her legal claims when she filed for bankruptcy, the district court failed to give full effect to the principle that "[w]ithout bad faith, there can be no judicial estoppel," *Zinkland v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007). It is true, as the district court emphasized, that

---

[5] Indeed, in a footnote to a recent unpublished opinion, the Fifth Circuit itself suggested a more limited role for the *In re Coastal Plains* presumption, contending that other courts applying or describing it have overstated its effects. *See United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 766 F. App'x 38, 44 n.3 (5th Cir. 2019).

Martineau gained access to Guest's criminal file – and with it, the information on which she bases her current suit – in 2013, before she filed for bankruptcy in 2015. But whether Martineau had access to the facts underlying her legal claims is a "separate question" from whether she "actually intended to manipulate the judicial system to [her] advantage." *Slater*, 871 F.3d at 1186. Failure to disclose still might have been inadvertent, in that Martineau, as she alleges, may have had no plans ever to file suit at the time she declared bankruptcy. And even if she did plan to sue, or at least had not ruled out the possibility, she still may have failed to disclose not deliberately but "because [she] did not understand the disclosure obligations." *Id.* As the Eleventh Circuit explained in *Slater*, "[i]t is not difficult to imagine that some debtors, particularly those proceeding *pro se*" – as Martineau was here – "may not realize that a pending lawsuit qualifies as a . . . claim that must be disclosed on a schedule of assets." *Id.* (internal quotation marks omitted).

Indeed, presuming bad faith from failure to disclose a legal claim is particularly unwarranted in a case like this one, in which there *was* no "pending lawsuit" to disclose when the debtor filed for bankruptcy. We have discussed already the authority that, at least arguably, might make Martineau's as-yet-unfiled lawsuit the property of her estate, requiring its disclosure. But we can see no reason to presume that Martineau was familiar with the relevant case law, and nothing about the bankruptcy forms themselves would have made clear to her the need to disclose a legal claim that she had neither filed

18

nor taken any steps toward pursuing.[6] The possibility of good-faith mistake, that is, is especially high with respect to a failure to disclose an as-yet purely hypothetical legal claim.

Second, the district court's reliance on a presumption of bad faith meant that it never considered the course of subsequent bankruptcy proceedings – specifically, that when Martineau reopened her bankruptcy proceedings and amended her disclosures to include the legal claims in question, the bankruptcy trustee abandoned the claims and the bankruptcy court closed her case without further action. Bankruptcy courts have multiple ways of protecting their own integrity against fraudulent nondisclosures. *See Ah Quin*, 733 F.3d at 275 (rejecting presumption of bad faith in part because "the bankruptcy system already provides plenty of protections" to bankruptcy courts to guard against threats to their integrity). Such courts may revoke a discharge and reopen long-closed bankruptcy proceedings if they suspect fraud, *see* 11 U.S.C. § 350(b); impose sanctions, *see* Fed. Bankr. R. P. 9011(c); or even refer debtors for criminal prosecution, *see* 18 U.S.C. § 152. Here, however, the bankruptcy court exercised none of these powers, a

---

[6] The "Statement of Financial Affairs" in Martineau's bankruptcy filing does call for information about "suits and administrative proceedings," but clearly contemplates only past or existing, and not future, suits: It specifies that the debtor "[l]ist all suits and administrative proceedings to which the debtor is or was a party *within one year immediately preceding the filing of this bankruptcy case*," and requests a caption and case number for each. J.A. 92 (emphasis added). And as the Eleventh Circuit held in *Slater*, the "Schedule B" reference to "contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," J.A. 169, cannot be conclusively presumed to put a pro se debtor like Martineau on notice of her duty to disclose even *pending* legal claims, let alone as-yet-unfiled legal claims. 871 F.3d at 1186.

strong indication that it did not believe Martineau acted in bad faith.  Like the Eleventh Circuit, we "see no good reason why, when determining whether a debtor intended to manipulate the judicial system, a district court should not consider" a bankruptcy court's decision "to allow the debtor to amend his disclosures or reopen his bankruptcy case" without imposing any sanction.  *Slater*, 871 F.3d at 1187.

Finally, the district court's reliance on a presumption of bad faith runs the risk of producing a decidedly non-equitable result, counter to the very underpinnings of judicial estoppel.  *See id.* at 1186.  The main beneficiaries of the district court's holding are Wiers and Guest, "civil defendant[s]" who stand to gain a potential "windfall," *id.*, if judicial estoppel precludes any recovery by Martineau.  Martineau's creditors, on the other hand, are unaffected; after reviewing Martineau's complaint on their behalf, the bankruptcy trustee abandoned any interest they otherwise might have had in the proceedings.  We discern little in the way of equities to recommend an outcome in which judicial estoppel "operates . . . to the benefit of only an alleged bad actor," *Ah Quin*, 733 F.3d at 275.

The defendants do not argue otherwise.  Instead of defending the presumption of bad faith, they insist that the district court in fact did not apply such a presumption.  We disagree.  The magistrate judge spelled out the details of the presumption in question, quoting from the Fifth Circuit case in which it seems to have originated, *In re Coastal Plains*, and citing other cases applying the presumption.  The district court, adopting the magistrate judge's recommendation, applied precisely the same presumption, limiting its bad-faith inquiry to Martineau's "knowledge of the undisclosed claims and . . . motive for concealment of the claims."  J.A. 302.  Because that presumption improperly excluded

20

from consideration other factors that might bear on whether Martineau's nondisclosure was intended to deceive or a good-faith error, we vacate the district court's judgment and remand for a full analysis of all the "specific facts and circumstances," *King*, 159 F.3d at 196, of Martineau's case.

2.

On remand, the district court will have the opportunity to consider in the first instance all the facts shedding light on whether Martineau "intentionally misled the court to gain [an] unfair advantage," *John S. Clark*, 65 F.3d at 29 (internal quotation marks omitted), when she failed to disclose her legal claims against the defendants. We recognize that there are two distinct nondisclosures at issue here. The first is Martineau's initial failure to list her not-yet-pending claims when she filed for bankruptcy in 2015, the primary focus of the district court and of our analysis above. But even after she filed this action in 2016, Martineau did not immediately move to reopen her bankruptcy proceedings and disclose her cause of action, notwithstanding her continuing disclosure obligations to the bankruptcy court. *See In re Coastal Plains*, 179 F.3d at 208 (debtor's duty of disclosure is a "continuing one"). Instead, as the district court noted, Martineau returned to the bankruptcy court and amended her filings only after the defendants called attention to her bankruptcy proceedings in their motion to dismiss, several months later. Whether that sequence of events is evidence of a deliberate effort to hide these claims from the bankruptcy court, as the defendants urge, or entirely consistent with Martineau's account – that the defendants' motion to dismiss apprised her that she mistakenly had omitted these claims from her bankruptcy schedules, at which point she promptly moved

21

to correct her oversight – is for the district court to determine, after consideration of all relevant facts and circumstances.

The district court also should consider on remand whether judicial estoppel is warranted under the other factors laid out by the Supreme Court in *New Hampshire*. The inquiry into bad faith is central to the judicial estoppel question, but it is not the only consideration. As the Court explained in *New Hampshire*, judicial estoppel typically would apply only if Martineau has taken "clearly inconsistent" positions, with the first – the implicit disavowal, through nondisclosure, of any legal claim against the defendants – accepted by the bankruptcy court as true, so that there is a "risk of inconsistent court determinations" if she is not estopped in the district court. 532 U.S. at 750–51. But once Martineau reopened her bankruptcy proceedings and corrected her disclosures, it is at least arguable that she was taking the *same* position – that she had valid legal claims against the defendants – before both courts, and that the bankruptcy court, by accepting the amended disclosures and granting a new discharge, was no longer crediting the initial position. At least one court has determined that under these circumstances, "two of the three primary *New Hampshire* factors are no longer met": "Although the plaintiff-debtor initially took inconsistent positions, the bankruptcy court ultimately *did not accept* the initial position," and there is "no risk of inconsistent court determinations." *Ah Quin*, 733 F.3d at 274. Similarly, under *New Hampshire*'s third factor, it is not clear that Martineau "derive[d] an unfair advantage or impose[d] an unfair detriment," 532 U.S. at 751, on the defendants through her initial nondisclosure; at the end of the day, it was the second bankruptcy trustee's independent decision to abandon any interest in Martineau's legal

22

claims rather than pursue them on behalf of Martineau's creditors. *See Ah Quin*, 733 F.3d at 274 (plaintiff-debtor who amended her bankruptcy filings to disclose a pending legal claim "*did not obtain an unfair advantage*").

We leave these questions to the district court in the first instance. Consistent with the Supreme Court's guidance in *New Hampshire* and our circuit precedent, the district court should consider all relevant factors and take account of all facts and circumstances in determining whether it is appropriate to invoke judicial estoppel against Martineau, without reliance on a presumption of bad faith.[7]

### III.

For the foregoing reasons, we vacate the district court's grant of summary judgment to the defendants and remand the case for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

[7] As noted above, the defendants moved to dismiss Martineau's complaint on multiple grounds unrelated to Martineau's bankruptcy, including statute-of-limitations grounds. The district court did not rule on those defenses in granting judgment to the defendants, and we take no position on them here. On remand, of course, the district court is free to address any of these additional defenses.