Peelle, J.,
delivered the opinion of the court:
The question in this case ax-ises on the motion of counsel suggesting the death of the claimant and asking leave to *89 prosecute the action in the name of the administrator of his estate.
While that motion was pending- the case was submitted on the merits for final action; but as the motion, as well as the certificate of the appointment of the administrator filed therewith, failed to disclose the date of the claimant’s death, and the evidence indicated that it was prior to the time of the filing of the petition herein, the case was remanded for more specific evidence on that point.
The motion to revive the case in the name of the administrator was argued and submitted January 19, 1903. In the argument the counsel for the administrator conceded that at the time of filing the original petition herein, December 5, 1891, the claimant, Loreto Gallegos, was dead.
The petition was verified and filed — no doubt in good faith— by one Isaac K. Hitt, who was then, as recited in his affidavit to the petition, acting as the “agent and attorney in fact for petitioner.”
The action was sought to be prosecuted under the act of March 3, 1891 (26 Stat. L., 851), the second section of which, so far as material to this case, reads:
‘ ‘ That all claims existing at the time.of the taking effect of this act shall be presented to the court by petition, as hereinafter provided, within three years after the passage hereof, or shall be thereafter forever barred.”
Section 3 of the act provides:
“That all claims shall be presented to the court by petition setting forth in ordinary and concise language, without unnec-sary repetition, the facts upon which such claims are based, the persons, classes of persons, tribe or tribes, or band of Indians by whom the alleged illegal acts were committed, as near as may be, the property lost or destroyed, and the value thereof, and any other facts connected with the transaction and material to the proper adjudication of the case involved. The petition shall be verified by the affidavit of the claimant, his agent, administrator, or attorney, and shall be filed with the clerk of said court. It shall set forth the full name and residence of the claimant, the damages sought to be recovered, praying the court for a judgment upon the facts and the law.”
*90 The question therefore is, Can the petition thus filed in the name of a dead man bo made the basis of an amendment for' reviving- the action in the name of the administrator of his estate?
This involves the question as to whether the claim was, in the language of section 2, “presented to the court bjr petition,” verified by the claimant, his ag-ent, administrator, or attorney.
As the claimant was not alive when the petition was verified and filed, he could not, of course, act by agent or attorney, for whatever authority he may have conferred in that respect terminated with his death.
It follows- that unless there was once a cause pending, brought within the jurisdictional period, there could be no basis in law or equity for reviving the case in the name of the administrator of the deceased claimant.
When the petition was filed in the name of the dead man it was a nullitj!- — as if no suit had been brought — and could not, therefore, form the basis of any amendment whatever, either as to the parties or the subject-matter. This is unquestionably the rule at common law, and ever has been, and we are aware of no decision of any court to the contrary, nor of any provision of any statute making an exception to the common-law rule in this respect.
In the case of Clay v. Oxford (L. R., 2 Ex., 54), the same question was involved. There an action was commenced in the name of the plaintiff, who, it was afterwards discovered, had died before the date of the writ, and thereafter a summons was taken out to substitute the name of his executrix. The question there was as to whether or not, under the common-law procedure act of 1852, the court had power to make the amendment; that is to say, whether or not the act had made such change in the common law as authorized them to permit the amendment to be made. The court held, all the judges concurring, that they had no such power. That the power of amendment was “limited to cases where there was originally a party suing, possessed, though with a variety in legal description, of the same interest with the party to be substituted.” But it is hardly necessary to cite authorities in support of so elementary a proposition.
*91 When the statute, as in the present case, provides that all such claims “shall be presented to the court by petition * * * within three years after the passage hereof,” that, of course, means that such petition shall be presented, not in the name of a dead man, but in the name of the party in interest as recognized by the rules of law, so that to allow the administrator to file a petition under the guise of an amendment would be to defeat the purpose of the act in respect of the time within which such action must be brought thereunder.
When the Congress conferred upon the court jurisdiction to hear and determine the claims of citizens for property taken or destroyed by Indians, they thereby intended that the court should be governed by the established rules of law applicable to the cases presented under the act, and as the statute itself contains no exception in respect of such amendments, the court has no power to engraft one upon it by way of construction.
In law, therefore, the question is precisely the same as though no petition had ever been filed, and hence the petition of the administrator now sought to be filed is barred by the sections of the statute quoted; and to permit the petition to be filed so as to give the administrator standing in this court would be the exercise of arbitrary power, as the court is without discretion in the premises. The Congress by the act defined the conditions upon which the citizen may maintain an action against the Government and the Indian, and these conditions must be complied with, both as to parties plaintiff and defendant, before, the court can acquire jurisdiction.
The only case seemingly in favor of the claimant’s contention is that of Duran (31 C. Cls. R., 353). In that case a new Indian defendant was allowed to be substituted after the time fixed by the act within which to bring suits, on the ground, as stated by the court, that “this suit is brought against the United States and the Apache Indians. It should have been brought against the United States and the Navajos. The error was an oversight of the attorney, for it appeared on the face of the evidence in the Department of the Interior that the alleged depredation was committed by the Navajos and not the Apaches.”
*92 It will tbus be seen that before the action in that case was commenced in this court the proof filed in the Interior Department, which was transmitted to the court under section 13 of the act, disclosed the real party committing the wrong; so, conceding that there was some foundation for allowing the amendment in that case, it should not be extended to a case liké the present for the reason that here there is no case in court, while there there was, as the United States as well as the Indians are defendants under the act. By the act the United States assumes the liability shown to exist against the tribe for its wrongful acts, but only on condition that such claim shall be presented to the court by petition within three yeai's after the passage of the act.
In our view of the case, therefore, the question is one of jurisdiction, and not of discretion; and as the proceeding in the name of a dead man is a nullity, and so recognized by all courts, it must be held that as the time within which to file petitions under the act long since expired, the motion to revive the action in the name of the administrator bjr way of amendment must be denied and the petition so far as it appears upon the records of the court is therefore dismissed,