**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1779

KENNETH HOUSE,

    Plaintiff - Appellant,

        v.

MITRA QSR KNE LLC, d/b/a KFC,

    Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, District Judge.  (1:17-cv-00412-GLR)

Argued:  October 29, 2019                    Decided:  December 3, 2019

Before HARRIS, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

Motion to dismiss appeal granted by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Richardson and Judge Quattlebaum joined.

Andrew M. Dansicker, LAW OFFICE OF ANDREW M. DANSICKER, LLC, Hunt Valley, Maryland, for Appellant.  Bruce Philip Merenstein, SCHNADER HARRISON SEGAL & LEWIS LLP, Philadelphia, Pennsylvania, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

The designated plaintiff in this case, Kenneth House, died two days before suit was filed in his name against his former employer, defendant Mitra QSR KNE LLC. Under governing Maryland law, House's claims could be pursued only by the personal representative of his estate, and so House sought to substitute the estate representative as plaintiff. Instead, the district court granted summary judgment to Mitra, holding that because House was deceased when suit was filed, the purported action was a "mere nullity." And that defect, the court found, could not be cured under Rule 17(a)(3) of the Federal Rules of Civil Procedure, which allows for substitution of a proper party when suit is brought in the name of someone other than the real party in interest.

House now seeks to appeal that ruling. But because House lacks standing, we must dismiss this appeal for lack of jurisdiction. We conclude that House lacks standing on appeal for much the same reason Mitra prevailed in the district court: House's suit, instituted in the name of a deceased plaintiff, suffers from two distinct flaws. The first – that it was not brought in the name of the estate representative – gives rise to a non-jurisdictional issue regarding the real party in interest that could be addressed under Rule 17. But the second – that a deceased plaintiff lacks Article III standing – amounts to a jurisdictional defect that falls outside Rule 17's scope and cannot be cured.

## I.

### A.

While working as General Manager at a Baltimore KFC location owned by Mitra, House informed his supervisor that he suffered from alcoholism – a qualifying disability under the Americans with Disabilities Act (ADA) – and that he had been accepted into a twenty-eight-day treatment program. Though House was assured that his job would be waiting for him when he completed treatment, he returned from treatment to learn that he had been terminated. House filed a discrimination charge with the EEOC, which subsequently issued a right to sue letter on November 14, 2016, giving House ninety days – until February 13, 2017 – to file a lawsuit against Mitra.

House died on February 11, 2017, at a treatment facility in California, without filing suit. House's wife notified his counsel on February 13, 2017, but counsel – faced with the EEOC deadline of the same day – nonetheless proceeded to file suit against Mitra in House's name, asserting House's ADA claim. House's counsel did not inform Mitra or the district court that House had passed away – and passed away before suit was filed – until after Mitra answered the complaint. At that point, House's counsel filed a notice of death with the court.

### B.

Mitra moved to dismiss or, in the alternative, for summary judgment, arguing that the suit against it was a "nullity" because House was deceased at the time it was filed. *House v. Mitra QSR KNE, LLC*, No. CV GLR-17-412, 2018 WL 3353068, at *3 (D. Md. May 31, 2018). House conceded that the suit could not go forward under his name, and

3

that "under normal circumstances, a deceased individual cannot file a lawsuit." J.A. 36. He argued, however, that the district court should allow him to substitute House's estate representative as plaintiff under Rule 17(a)(3) of the Federal Rules of Civil Procedure. Under the terms of that Rule, House contended, the substitution would "relate back" to the date the complaint was filed, effectively reviving the suit. *See* Fed. R. Civ. P. 17(a)(3) ("After . . . substitution, the action proceeds as if it had been originally commenced by the real party in interest.").

The district court granted summary judgment in Mitra's favor, holding that a suit filed in the name of a deceased plaintiff is a legal "nullity that House cannot cure." *House*, 2018 WL 3353068, at \*4. As the district court explained, "courts agree" that where the original suit is a "nullity" for want of a living plaintiff, there exists no claim or action "capable of amendment" or substitution under Rule 17. *Id.* at \*3 (citing cases). Without "the prerequisite of legal existence," that is, Rule 17 "never becomes relevant." *Id.* at \*4. (quoting *In re Asbestos Prod. Liab. Litig. (No. VI)*, 311 F.R.D. 152, 155 (E.D. Pa. 2015)).

Now on appeal, House challenges the district court's ruling and its refusal to substitute the personal representative of House's estate as plaintiff under Rule 17(a)(3).

## II.

We begin with Mitra's motion to dismiss this appeal for lack of jurisdiction. According to Mitra, House lacks standing on appeal for the same reason his claim could not proceed before the district court: House's lack of legal existence when suit was filed amounts to a jurisdictional defect that cannot be cured through substitution under Rule 17.

4

And Mitra is correct that this purported jurisdictional defect, if borne out, would deprive this court as well as the district court of jurisdiction. *See Baltimore Gas & Elec. Co. v. United States*, 290 F.3d 734, 739 (4th Cir. 2002) (noting that a party that lacks standing to bring an action in the district court "likewise lacks standing to appeal the district court's judgment"). House disagrees, arguing that regardless of whether House had standing at the outset of this suit, substitution of the estate representative as plaintiff would address that issue.

These are, in substance, the same arguments presented to the district court on summary judgment.[1] In other words, the question of whether this court has jurisdiction to hear House's appeal and whether the district court properly determined that House's case could not go forward are essentially one and the same. If we agree with the district court that House's lack of legal existence when suit was filed is a jurisdictional defect, then the same defect renders us without jurisdiction to hear this appeal. For that reason, we begin by considering the district court's decision granting summary judgment in Mitra's favor. And because we agree with the district court that House's case suffers from a non-curable jurisdictional defect, we must dismiss House's appeal.

---

[1] House also suggests on appeal that Rule 43(a)(3) of the Federal Rules of Appellate Procedure now provides an independent ground for substitution of the estate representative as appellant. But by its terms, Rule 43(a)(3) applies only upon the death of "a party *against whom* an appeal may be taken," and only when that death occurs "*after entry of a judgment or order in the district court*." Fed. R. App. P. 43(a)(3) (emphasis added). Nor may House rely on Rule 43(a)'s other provisions regarding the death of a party, which apply only when a party dies during the pendency of an appeal or is otherwise entitled to appeal. *See* Fed. R. App. P. 43(a)(1), (2).

## III.

As noted above, House does not dispute that a suit brought in the name of a deceased plaintiff may not proceed as filed. Instead, his position is that the district court should have allowed the substitution of his estate representative as plaintiff under Rule 17. According to House, that substitution would have related back to cure any defect in the original suit, because after a Rule 17 substitution an "action proceeds as if it had been originally commenced by the real party in interest," Fed. R. Civ. P. 17(a)(3).

We must disagree. First, House fails to appreciate the jurisdictional nature of the defect identified by the district court: The problem is not only that House is not the "real party in interest" under Rule 17; it is also that House, because he was deceased when suit was filed, lacks Article III standing in federal court. And second, even on its own terms, House's argument misreads Rule 17, which cannot and does not purport to override Article III's limitations on federal court jurisdiction.

## A.

Rule 17(a) requires that an action be prosecuted "in the name of the real party in interest," Fed. R. Civ. P. 17(a)(1) – the person "who, according to the governing substantive law, is entitled to enforce the right" in question, 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1543 (3d ed.) ("Wright & Miller"). Where the flaw in an action is the failure to bring suit in the name of the real party in interest, Rule 17 provides a remedy. Under Rule 17(a)(3), a court should allow for substitution of the real party in interest and may not dismiss the action "until . . . a

6

reasonable time has been allowed" for that substitution.  Fed. R. Civ. P. 17(a)(3). According to House, that provision governs this case.

But House is conflating two separate issues:  Rule 17's requirement that his ADA action be prosecuted in the name of his estate representative, as the real party in interest; and Article III's requirement that a plaintiff filing suit in federal court have standing to do so.  *See Martineau v. Wier*, 934 F.3d 385, 391–92 (4th Cir. 2019) (distinguishing real-party-in-interest and standing requirements).  For House's action to proceed, that is, the plaintiff must "*both* be the real party in interest and [also] have standing."  Wright & Miller, § 1542 (emphasis added).  Those are distinct doctrines, serving different purposes.  The Article III standing requirement, unlike Rule 17, limits a federal court's jurisdiction, ensuring that it is exercised only to resolve actual "Cases" or "Controversies."  U.S. Const. art. III, § 2; *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90 (2015) (Rule 17(a) "address[es] party joinder, not federal-court subject-matter jurisdiction"); *House*, 2018 WL 3353068, at *3 (Rule 17 "only contemplates the capacity to sue," not "the prerequisite of legal existence") (internal quotation omitted).  The standing inquiry, importantly, is undertaken at "the outset of the litigation," when suit first is filed.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).  It is at that point that a plaintiff must satisfy the familiar three-part standard, alleging a concrete, particularized injury, fairly traceable to the challenged conduct, and likely to be redressed by a favorable judicial decision.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  If a party does not have standing, then there is no federal jurisdiction, and "the only function remaining to the

7

court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 7 Wall. 506, 514 (1868).

We recently distinguished the two doctrines in *Martineau v. Wier*, a bankruptcy case. There, plaintiff Martineau filed suit after her Chapter 7 bankruptcy proceedings closed, seeking to pursue a tort action. *See* 934 F.3d at 387. The district court held that Martineau lacked Article III standing because at the time she sued, her tort claims were the property of her bankruptcy estate. *See id.* We reversed, explaining that the district court had "conflate[d] Article III standing with the distinct issue of whether Martineau or her bankruptcy trustee was the 'real party in interest,' legally entitled to pursue these claims." *Id.* at 391. It was clear, we held, that Martineau had Article III standing, having alleged a concrete injury caused by the defendants in her tort action and redressable by a favorable decision in that case. *See id.* Instead, the problem was that at the time of filing, the bankruptcy trustee, and not Martineau, was the real party in interest with the right to pursue tort claims belonging to the bankruptcy estate. *See id.* And that Rule 17 problem, we concluded – unlike an Article III defect, measured at the time of filing – could be cured by post-filing developments, which in Martineau's case had returned her to real-party-in-interest status. *Id.* at 392.

Once we separate out these doctrines, it becomes clear that House's difficulty is two-fold: Not only is he not the real party in interest with respect to his ADA claim – though all agree he is not – but he also has a problem of the Article III variety. As noted above, the "essential and unchanging" requirement that a plaintiff have standing, *Lujan*, 504 U.S. at 560, is measured at the time suit is filed, based on an analysis of the facts as

8

they then exist. *See, e.g.*, *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (standing "depends upon the state of things at the time of the action brought"). And at the outset of this suit filed in House's name, House was deceased; for legal purposes, he did not exist. *House*, 2018 WL 3353068, at *3 ("[T]he prerequisite of legal existence is not met[.]") (internal quotation marks and citation omitted). As the district court appears to have recognized, that amounts to a jurisdictional defect under Article III. *Id.* at *4 ("House cannot cure" a lack of "legal existence").[2]

Absent a plaintiff with legal existence, there can be no Article III case or controversy. "The most elemental requirement of adversary litigation is that there be two or more parties. There must be a real plaintiff at the inception of the suit. . . ." Wright & Miller, § 3530. Only an actual and live plaintiff can "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions[.]" *Baker v. Carr*, 369 U.S. 186, 204 (1962); *see also Ellis v. Dyson*, 421 U.S. 426, 434 (1975) (expressing "grave reservations about the existence of an actual case or controversy" in challenge to loitering ordinance because

---

[2] The district court styled its holding as a grant of summary judgment in Mitra's favor. *See House*, 2018 WL 3353068, at *4. Ordinarily, a lack of subject-matter jurisdiction will lead to dismissal under Rule 12(b)(1), rather than summary judgment under Rule 56(c), which suggests a decision on the merits. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995); 5B Wright & Miller § 1350 n.33 (collecting cases). Accordingly, we treat the district court's entry of summary judgment for Mitra as a dismissal under Rule 12(b)(1) for want of jurisdiction. *See Abbott v. Pastides*, 900 F.3d 160, 175 n.8 (4th Cir. 2018) ("Because we are not bound by the label placed on the district court's disposition of the case, we [may] treat the district court's summary judgment ruling as a dismissal [under Rule 12(b)(1)].") (quoting *Mexiport, Inc. v. Frontier Commc'ns Servs., Inc.*, 253 F.3d 573, 574 n.2 (11th Cir. 2001)).

putative plaintiffs had not been heard from in a year). By the same token, a plaintiff without legal existence is a poor fit for the Article III standing trifecta of injury, causation, and redressability; it is not clear, for example, how a favorable court ruling could offer redress to a deceased person, or a party otherwise lacking legal existence. *See ChinaCast Educ. Corp. v. Chen Zhou Guo*, No. CV 15-05475-AB (Ex), 2016 WL 10653269, at \*2 (C.D. Cal. Jan. 8, 2016) (considering "the fundamental standing question of whether" alleged injuries can be redressed "if Plaintiff no longer legally exists"). But however we frame the jurisdictional defect here, the outcome is the same: "There is no plaintiff with standing if there is no plaintiff." *In re: 2016 Primary Election*, 836 F.3d 584, 587–88 (6th Cir. 2016).

There is nothing groundbreaking about the insight that a suit filed on behalf of a deceased person raises Article III concerns. As early as 1903, the Court of Claims rejected a motion to "revive" a case through substitution of a new plaintiff where an action had been "filed by the attorney in ignorance of and shortly after the death of the claimant." *Gallegos v. United States*, 39 Ct. Cl. 86, 86, 89 (Ct. Cl. 1903). The court held that "[w]hen the petition was filed in the name of the dead man it was a nullity – as if no suit had been brought – and could not, therefore, form the basis of any amendment whatever, either as to the parties or the subject-matter." *Id*. at 90. In such circumstances, the question of whether to allow substitution "is one of jurisdiction, and not of discretion." *Id*. at 92.

Since then, most courts to consider this question have reached the same result, concluding that a deceased plaintiff's lack of legal existence – as opposed to a lack of capacity to sue or a real-party-in-interest problem – is a non-curable jurisdictional defect. *See, e.g.*, *Shelton v. Crookshank*, No. 3:17-CV-108, 2017 WL 9565841, at \*3 (N.D. W. Va.

10

Nov. 17, 2017); *In re Asbestos Prod. Liability Litigation (No. VI)*, 311 F.R.D. at 155; *In re Engle Cases*, No. 3:09-cv-10000-J-32JBT, 2013 WL 8115442, at *2 (M.D. Fla. Jan. 22, 2013); *In re Aredia & Zometa Prod. Liab. Litig.*, No. 3-06-MD-1760, 2012 WL 2015791, at *2 (M.D. Tenn. June 5, 2012); *Gamblin v. Miss. Farm Bureau Mut. Ins. Co.*, No. 3:07CV698 HTW-LRA, 2010 WL 1780221, at *10 (S.D. Miss. Apr. 30, 2010); *Adelsberger v. United States*, 58 Fed. Cl. 616, 618 (Fed. Cl. 2003); *Banakus v. United Aircraft Corp.*, 290 F. Supp. 259, 260 (S.D.N.Y. 1968). And in an only slightly different context, courts routinely dismiss suits brought by dissolved corporations – which have no legal existence under state law – for lack of jurisdiction. *See, e.g.*, *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, No. 15-CV-871 (SHS), 2019 WL 4413197, at *3 (S.D.N.Y. Sept. 16, 2019) (noting that dissolved corporation lacks ability to suffer redressable injury necessary to support Article III standing); *ChinaCast Educ. Corp.*, 2016 WL 10653269, at *2 ("Unlike a case where a corporation exists in some form but perhaps lacks a technical capacity to sue . . . Plaintiff may not legally exist under Delaware law, raising the fundamental standing question of whether the Court can redress any of Plaintiff's alleged injuries."); *Northpoint Tech., Ltd. v. Directv, Inc*, No. 1-09-CV-506 JRN, 2010 WL 11444098, at *2 (W.D. Tex. Oct. 25, 2010) ("A question as to legal existence is an issue of standing. . . . If it does not legally exist, [plaintiff] can hold no stake in the outcome of this or any case.").

Absent legal existence at the outset of this litigation, House could not have "a personal stake in the outcome of the controversy" sufficient "to warrant his invocation of federal-court jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Because House

11

personally stands to gain or lose nothing from the suit, no matter how it is resolved, he cannot avail himself of the jurisdiction of the federal courts.

**B.**

To the extent House argues that this defect, even if properly categorized as jurisdictional, still may be cured under Rule 17, he is mistaken. A procedural rule cannot revive a lawsuit that a federal court lacks power to adjudicate at the outset. Nor does Rule 17 purport to do so: By its own terms, Rule 17 does not allow for substitution when a plaintiff is deceased at the time suit is filed.

1.

As we have explained, jurisdiction is a threshold issue, determined at the time of filing. *See Martineau*, 934 F.3d at 392. And when jurisdiction does not exist at that time, the court's only role is to dismiss the case: If a plaintiff lacks standing, the federal "courts have no business deciding [the case], or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). It follows that once the district court determined that House's suit was a legal nullity, that ended the matter; there was neither need nor authority for the court to consider whether, *had* there been jurisdiction, a Rule 17 substitution might relate back to cure a real-party-in-interest error. *See House*, 2018 WL 3353068, at *3 (where "prerequisite of legal existence is not met, [] Rule 17 never becomes relevant") (internal quotation omitted).

Nothing in the Federal Rules of Civil Procedure can alter this Article III conclusion. The Federal Rules of Civil Procedure "do not extend or limit the jurisdiction of the district courts." Fed R. Civ. P. 82; *see also* 28 U.S.C. § 2072(b) (the Federal Rules of Civil

12

Procedure "shall not abridge, enlarge or modify any substantive right"). Courts have recognized this straightforward proposition in precisely this context, holding that Rule 17 cannot operate to create jurisdiction where it does not otherwise exist. *See Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531–32 (6th Cir. 2002) (because the Federal Rules "cannot expand the subject matter jurisdiction of federal courts beyond the limits of [the] U.S. Constitution . . . [Rule 17(a)] must be read with the limitation that a federal district court must . . . have subject matter jurisdiction over the original claims"). And district courts have routinely rejected attempts to use Rule 17 to confer jurisdiction retroactively. *See Kinra v. Chicago Bridge & Iron Co.*, No. 17 CIV. 4251 (LGS), 2018 WL 2371030, at \*5 (S.D.N.Y. May 24, 2018) (dismissing for lack of subject-matter jurisdiction where "the original plaintiff did not have Article III standing and that defect cannot be cured with a Rule 17 substitution"); *Tech-Sonic, Inc. v. Sonics & Materials, Inc.*, No. 3:12-CV-01376 (MPS), 2016 WL 3962767, at \*10 (D. Conn. July 21, 2016) (holding that "Rule 17 cannot be used to overcome a jurisdictional defect"); *Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12 Civ. 0722, 2012 WL 4849146, at \*7 (S.D.N.Y. Oct. 12, 2012) (declining to apply Rule 17 to cure standing deficiency where none of the plaintiffs had "Article III standing on *any* of their claims as of the date the original Complaint was filed") (emphasis in the original).

House identifies only two cases, both from outside this circuit, in support of his contention that substitution under Rule 17(a)(3) can revive a suit that was a nullity ab initio, and neither is availing. The first, *Wilson v. Big Lots, Inc.*, No. CV-13-S-1008-NE, 2013 WL 5532703, at \*3 (N.D. Ala. Oct. 7, 2013), does not address whether the suit in question was a nullity at the time it was filed, and so has no bearing on the question here. *See House*,

13

2018 WL 3353068 at *4 (discussing *Big Lots*).  And in the second, *Esposito v. United States*, 368 F.3d 1271 (10th Cir. 2004), the court failed to address the jurisdictional implications of a deceased plaintiff, holding only "that [the plaintiff's] *lack of capacity* at the time the suit was filed d[id] not prevent the substitution from relating back to the date the suit was filed under Rule 17(a)."  *Id*. at 1278 (emphasis added).  Here, as explained, it is not House's lack of capacity or his real-party-in-interest defect that forecloses a remedy under Rule 17, but rather the fact that House had no legal existence – and, thus, no standing to bring suit – at the time of filing.

2.

Finally, House's reading of Rule 17(a) – allowing for substitution when suit is filed on behalf of a deceased person – is unpersuasive on its own terms.  This is not a case, in other words, in which there is a conflict between a procedural rule and Article III, with Article III taking precedence.  Rather, the two are entirely consistent:  A plaintiff who is deceased when suit is filed lacks Article III standing, and nothing about Rule 17(a) purports to allow that defect to be cured retroactively through post-filing substitution of a new plaintiff.

House directs us to the "plain language" of Rule 17, arguing that it nowhere requires that the original plaintiff be alive at the time suit is filed before a substitution is approved. We disagree.  Rule 17 states that "[a]n action must be prosecuted in the name of the real party in interest," Fed. R. Civ. P. 17(a)(1), and that:

> The court may not dismiss *an action* for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into *the*

14

> *action.* After ratification, joinder, or substitution, *the action* proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3) (emphases added). What Rule 17 requires, in other words, is "an action" into which a new plaintiff may be substituted. And where, as here, a suit is a nullity at the time it is filed for want of a living plaintiff, then there is no underlying "action" at all. *See In re Asbestos Prod. Liab. Litig. (No. VI)*, 311 F.R.D. at 155 ("Rule 17 describes dismissing an 'action,' however, here, there are no legitimate actions to dismiss."); *House*, 2018 WL 3353068, at *3.

Nor, importantly, did the drafters of the Federal Rules somehow overlook the possibility that a plaintiff might pass away. On the contrary: The Rules expressly provide for substitution upon the death of a party, but conspicuously fail to cover situations like this one, in which the death occurs before suit even is filed. Rule 25 of the Federal Rules of Civil Procedure, for instance, specifically governs substitution upon the death of a party, but as House has conceded, that rule applies only "when a plaintiff dies *after* he files the complaint." *House*, 2018 WL 3353068, at *3 n.4 (emphasis added); *see* Fed. R. Civ. P. 25(a)(1) ("If a party dies and the claim is not extinguished, the court may order substitution of the proper party."). Likewise, Rule 43 of the Federal Rules of Appellate Procedure applies when a party dies *after* final judgment is entered and while an appeal is pending. *See* Fed R. App. P. 43(a). Taken together, the Rules work consistently and to the same end, facilitating substitution when a party dies *during* litigation but not when a putative plaintiff dies *before* litigation is commenced in his or her name.

15

Finally, we are not persuaded by House's argument that only by adopting his strained reading of the relevant Rules can we avoid the forfeiture of otherwise valid claims upon the sudden death of a potential plaintiff. Here, for example, Maryland law would have allowed House's suit to be filed in the name of a future personal representative, *see* Md. Code Ann., Est. & Trusts § 6-105(a) (permitting acts "done in good faith" in future representative's name), or in the name of someone else with a stake in the outcome of this case – for example, House's wife – as a placeholder, with the personal representative substituted as plaintiff once he or she was appointed, *id.* § 6-105(b) (allowing personal representative to "ratify and accept acts done on behalf of the estate by others" once appointed). Though we are sympathetic to the unfortunate and hurried circumstances surrounding the filing of this action, they are not a basis for going beyond the plain import of the governing Rules.

## IV.

For the foregoing reasons, the district court correctly concluded that this suit, filed in House's name only after House had passed away, is a nullity that cannot be cured by substitution under Rule 17. Because that defect is jurisdictional, we must dismiss House's appeal.[3]

---

[3] We note that House's notice of appeal was filed not only in his own name but also that of his estate representative, though the estate representative does not appear on a brief before us. Mitra argues that the estate representative may not appeal under our "general rule" that "only named parties to the case in the district court and those permitted to intervene may appeal an adverse order or judgment." *United States v. Under Seal*, 853 F.3d 706, 721 (4th Cir. 2017) (internal quotation omitted). Though Mitra refers to this as a question of "standing," the rule against nonparty appeals arises from "prudential" rather

16

than constitutional concerns, *see United States v. Perry*, 360 F.3d 519, 532 (6th Cir. 2004), and so we have made an "exception[]" for nonparties with "an interest in the cause litigated" who have "participated in the [district court] proceedings actively enough to make [them] privy to the record," *see Kenny v. Quigg*, 820 F.2d 665, 668 (4th Cir. 1987) (setting out exception).  We need not decide whether that exception applies here.  For the reasons we have given, the district court was correct in its determination that House's case could not proceed because of a threshold jurisdictional defect.  So even assuming the estate representative were entitled to appeal that ruling and had done so here, there would be no grounds for reversal.