**Commonwealth** of the Northern
Mariana Islands,
Plaintiff/Appellee,
v.
Vivencio **Anglo**, Celso Catinding,
Nestor Jingco, Andronico Pelen,
Aquilino Semana, Donicio Semana,
Defendants/Appellants.
Appeal No. 97-034
Civil Action No. 96-0885C
March 4, 1999

---

[10] *O'Connor v. Div. of Public Lands,* Civil Action No. 97-0053 (N.M.I. Super. Ct. May 12, 1997) (Order at 1).

Argued and Submitted October 1, 1998

Counsel for appellants: Thomas E. Clifford, Assistant Attorney General, Saipan.

Counsel for appellee: Pamela Brown, Saipan. (Long & Brown)

BEFORE: CASTRO, Associate Justice, MANIBUSAN, and TAYLOR[1], Justices Pro Tem.

CASTRO, Associate Justice:

¶1 ■ This is an appeal from a Superior Court order granting the Commonwealth of the Northern Mariana Islands (the "government") summary judgment. The Superior Court held that the defendants' license to occupy public land on the island of Rota had been properly revoked by the Division of Public Lands, and as such they must vacate the land. The court further held that the defendants failed to meet the necessary requirements to claim restitution for the value of improvements made on the property.

¶2 We have jurisdiction under Article IV, section 3 of the Commonwealth Constitution. N.M.I. Const. art. IV, § 3 (1997). We affirm.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

¶3 ■ Appellants contend that the Superior Court erred in granting the government summary judgment as a matter of law. Specifically, appellants present two issues for our review. The first is whether the Superior Court erred in finding that the government had standing to bring this action. Since standing is a jurisdictional issue, it is a question of law, reviewable de novo. *Mafnas v. Commonwealth*, 2 N.M.I. 248, 256 (1991).

¶4 ■ The second is whether the Superior Court erred in denying appellants reimbursement for the value of improvements or, in the alternative, for the expenditure of funds and labor for improvements. This is also a question of law, reviewable de novo. *Westenberger v. Atalig*, 3 N.M.I. 471, 475 n.3 (1993).

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 The appellants[2] are elderly persons who have been occupying a contiguous strip of public land on the island of Rota, described as tract 27-1, since about 1990. Appellants are not persons of Northern Marianas descent. In 1992, each of the appellants entered into temporary residential use permits with the Marianas Public Land Corporation ("MPLC"). The permits expressly granted appellants the right to construct temporary shelters in return for payment of $100 per month. The permits also expressly stated that they "shall not be construed in any manner, substance or form as a grant of an interest in the above described land, whether freehold or leasehold."[3] After an initial one-year period, the permits were renewable annually upon thirty days advance written notice by the permit holder to MPLC. Notwithstanding the stated one-year periods of the permits, MPLC could cancel the permits at any time by providing at least ninety days advance written notice.

¶6 Appellants expended their own time and money to improve the property, which prior to 1992 was used as a dump site. After the permits were issued in 1992, they were extended for another year until 1994.[4] Thereafter, the permits were not renewed, but appellants continued to make the $100 monthly payments until June 1996. In April 1996, the director of the Division of Public Lands ("DPL") provided each of the appellants with written notice to vacate the land within ninety days.[5] Appellants refused to vacate the land as requested, triggering this lawsuit by the government.[6]

---

[2] The six appellants are Vivencio Anglo, Celso Catindig, Nestor Jingco, Andronico Pelen, Aquilino Semana, and Donicio Semana

[3] Plaintiff/appellee's Exhibit B-1, Supplemental Excerpts of Record ("S.E.R.") at 21.

[4] *Commonwealth v. Anglo,* Civil Action No. 96-0885 (N.M.I. Super. Ct. Sept. 9, 1997) (Decision and Order Granting Summary Judgment for the Plaintiff at 1) ("Order").

[5] *See e.g.*, Defendants/appellants' Excerpts of Record ("E.R.") at 25.

[6] Appellants have asserted that this is a law enforcement matter brought by the Office of the Attorney General ("AGO"). However, neither the AGO nor any other government department or agency were named as the plaintiff in this matter. Article III, section 11 of the Commonwealth Constitution provides that the "Attorney General shall be responsible for . . . representing the Commonwealth in all legal matters, and prosecuting violations of Commonwealth law." N.M.I. Const. art. III, § 11. This is not a criminal prosecution which must "be conducted in the name of the 'Commonwealth of the Northern Mariana Islands'." 6 CMC § 6301. At oral argument, the government clarified that DPL is

(continued...)

---

[1] The Honorable Marty W.K. Taylor was sitting as Chief Justice when this appeal was argued and submitted, and has since been appointed Justice Pro Tem following his retirement from the Court.

¶7 Appellants counterclaimed for unjust enrichment.[7] Thereafter, the government filed a motion for summary judgment which the Superior Court granted on September 9, 1997. Appellants timely appealed.

## ANALYSIS

### I. The Superior Court did not err in finding that the government had standing to bring this action.

¶8 ■ Standing is "a concept utilized to determine if a party is sufficiently affected so as to insure that a justiciable controversy is presented to the court." *Borja v. Rangamar*, 1 N.M.I. 347, 360 (1990) (quoting BLACK'S LAW DICTIONARY 1260 (5th ed. 1979)). The essential element of standing is that a plaintiff personally has suffered either actual injury or threat of injury as a result of the defendant's conduct. *Wabol v. Muna*, 2 CR 231, 239 (N.M.I. Tr. Ct. 1985) (citing *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S. Ct. 1601, 1607, 60 L. Ed. 2d 66 (1979)), *rev'd in part*, 2 CR 963 (D.N.M.I. App. Div. 1987). Moreover, the plaintiff must show that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision." *Id.* (citing *Valley Force Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S. Ct. 752, 758, 70 L.Ed.2d 700 (1982)).

¶9 Appellants argue that the government lacks standing because DPL is not the successor to MPLC. Specifically, appellants claim that: (1) The Governor exceeded his reorganization powers under Article III, § 15 of the Commonwealth Constitution[8] when he dissolved MPLC and created DPL, within the Department of Lands and Natural Resources ("DLNR"), as the successor to MPLC by way of Executive Order ("E.O.") 94-3, § 306(a); and (2) E.O. 94-3, § 306(a) is unconstitutional in its entirety. Alternatively, appellants contend that even if DPL is a constitutionally valid entity, its administration must be exercised by the mayor of Rota through the resident director for DLNR. Hence, DPL's attempt to cancel appellants' permits usurped the authority of the mayor under Article III, § 17 of the Commonwealth Constitution and *Inos v. Tenorio*, Civil Action No. 94-1289 (N.M.I. Super. Ct. June 14, 1995) (Memorandum Decision and Declaratory Judgment).[9]

¶10 Without reaching the issue of the constitutionality of E.O. 94-3, § 306(a), the Superior Court concluded that the issue had become moot with the passage of Public Law

---

(...continued)
functions and duties shall be allocated by law among and within not more than fifteen principal departments so as to group them so far as practicable according to major purposes. Regulatory, quasi-judicial and temporary agencies need not be a part of a principal department. The functions and duties of the principal departments and of other agencies of the Commonwealth shall be provided by law. The legislature may reallocate offices, agencies and instrumentalities among the principal departments and may change their functions and duties. The governor may make changes in the allocation of offices, agencies and instrumentalities and in their functions and duties that are necessary for efficient administration. If these changes affect existing law, they shall be set forth in executive orders which shall be submitted to the legislature and shall become effective sixty days after submission, unless specifically modified or disapproved by a majority of the members of each house of the legislature.

N.M.I. Const. art. III, § 15.

[9] Because we conclude that the government had standing to bring this action, and appellants' local control argument is not directly relevant to determining the issue of standing, we decline to address the merits of this argument. We note, however, that *Inos v. Tenorio* remains authoritative law until the CNMI Supreme Court determines otherwise. In *Inos*, the Rota mayor sought declaratory and injunctive relief against the governor, prohibiting the governor from taking control of local civil servants and certain decentralized services amid the governor's effort to investigate allegations of labor violations. The Superior Court held that the governor must delegate the administration of public services to the mayor, but suggested that the governor has the power to revoke the delegation of public services: "While the initial delegation [of the administration of public services] to the mayors is mandatory, it is counterbalanced by an implicit power of revocation in the cases where a mayor fails to discharge his or her duty to ensure that the administration of public services reflects the policies of the Commonwealth government." *Inos v. Tenorio, supra* at 23.

---

(...continued)
the enforcement agency and the true plaintiff in this case. Hence, the caption of this lawsuit should have read: *Division of Public Lands, Department of Lands and Natural Resources v. Vivencio Anglo et al.*

[7] On September 24, 1996, Joseph S. Inos, Mayor of Rota, and Francisco S. Toves, Resident Department Head for the Department of Lands and Natural Resources ("DLNR"), filed a petition to intervene in this action. However, Toves subsequently withdrew from the petition. The Superior Court denied the Mayor's petition to intervene by order entered December 5, 1996. *Commonwealth v. Anglo*, Civil Action No. 96-0885 (N.M.I. Super. Ct. December 5, 1996) (Order Denying Mayor Inos's Petition to Intervene).

[8] Article III, § 15 of the Commonwealth Constitution provides in its entirety:

Executive branch offices, agencies and instrumentalities of the Commonwealth government and their respective

(continued...)

230

("PL") 10-57 which became effective April 18, 1997. The court noted: "Section 4 of P.L. 10-57 repeals Executive Order 94-3, § 306(a) and legislatively transfers the functions of the MPLC to the Department of Lands and Natural Resources." Order at 3. We reach the same result as the Superior Court – that MPLC's functions were properly transferred to DPL – but on different reasoning.

¶11 Public Law 10-57 provides in relevant part:

> § 2671. Division of Public Lands.
>
> (a) There is in the Department of Lands and Natural Resources a Division of Public Lands, headed by a Director serving under the supervision and control of the Secretary and the Board of Public Lands.
>
> (b) The Division of Public Lands is a successor to the Marianas Public Lands [sic] Corporation pursuant to Section 4(f) of Article XI of the Constitution. All powers and duties assigned to the Marianas Public Land Corporation by statute shall be considered as assigned to the Division of Public Lands.

PL 10-57, § 3.

This section came into effect on April 18, 1997. It clearly confirms that DPL was established to succeed MPLC after MPLC's dissolution. It became effective approximately one year after the director of DPL ordered appellants to vacate the land. PL 10-57 does not contain any retroactive application language. To the contrary, it contains a savings clause which states: "Repealers contained in this Act shall not affect any proceeding instituted under or pursuant to prior law." P.L. 10-57, § 6. It is therefore necessary to address the constitutionality of the prior applicable law in this case, section 306(a) of E.O. 94-3.

¶12 Appellants argue that section 306(a) of E.O. 94-3 is unconstitutional in its entirety because this Court previously held in *Sonoda v. Cabrera* that section 509 of E.O. 94-3 is unconstitutional. *Sonoda v. Cabrera,* 1997 MP 5 ¶4, 5 N.M.I. 57. Since E.O. 94-3 does not contain a severability clause, appellants contend that the entire enactment must fail.

¶13 While it may be true that lack of a severability clause suggests the intent that all provisions of an enactment "operate together or not at all," no presumption against severability is raised by the absence of a severability clause. *In Re Matter of Reyes,* 910 F.2d 611, 613 (9th Cir. 1990) (citation omitted); *see also* SUTHERLAND'S STAT. CONST., § 44.09 ("The presumption against separability in absence of separability clause is a weak one."). The test used to decide whether to sever part of an unconstitutional statute passed by Congress is the same test used for executive orders. *Mille Lacs Band of Chippewa Indians v. State of Minnesota,* 861 F. Supp.

784, 825 (D.Minn. 1994). Under this test,

> [u]nless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as law.

*Matter of Reyes,* 910 F.2d at 613 (citing *Champlin Ref. Co. v. Corporation Comm'n,* 286 U.S. 210, 234, 52 S. Ct. 559, 564, 76 L. Ed. 1062 (1932)).

¶14 Applying the test above, we find that section 306(a) would have been enacted independently of section 509(a).

¶15 First, section 509(a) involved the governor's power to appoint "all officials at or above the level of division director." E.O. 94-3, § 509(a). Since such appointees would be exempt from the civil service system in contravention of Article XX, § 1 of the Commonwealth Constitution, the *Sonoda* Court held that section 509(a) of E.O. 94-3 was an unconstitutional exercise of the Governor's power.

¶16 Second, section 306(a) is not dependent upon or conditioned on section 509(a)'s attempt to create a general executive appointment power. Section 306(a) carries out the mandate of section 4(f) of Article XI of the Commonwealth Constitution by dissolving MPLC and transferring its functions to DPL.[10] Without the unconstitutional provision of section 509(a), section 306(a) is independent and fully operative as law.

¶17 Support for the independence of section 306(a) may be further found by inquiring into the dominant purpose behind the enactment of E.O. 94-3. Here, the main purpose behind E.O. 94-3 is to reorganize the executive branch pursuant to the mandate of Article III, section 15 of the Constitution and to promote efficient administration. Section 306(a) helps accomplish this purpose by transferring any duplication of functions or overlapping responsibilities to the Department of Lands and Natural Resources. Any question of whether MPLC may be dissolved and reorganized by an executive order is preempted by the Commonwealth Constitution which provides that MPLC shall be dissolved and its functions shall be transferred to the executive branch of government. N.M.I. Const. art. XI, § 4(f).

¶18 We therefore conclude that section 306(a) was constitutionally enacted and that DPL is the successor to MPLC. Therefore, the government did have standing to bring this action to enforce the terms of the temporary

---

[10] "After this Constitution has been in effect for at least twelve years, the Corporation [MPLC] shall be dissolved and its functions shall be transferred to the executive branch of government." N.M.I. Const. art. XI, § 4(f).

permits.

## II. The Superior Court did not err in denying appellants reimbursement for the value of improvements or, in the alternative, for the expenditure of funds and labor for improvements.

¶19 ■ In order for an improver of another person's real property to claim restitution for the improvement, the improver must show that he or she "(1) is in possession of the property adverse to the owner, (2) possesses under color or claim of title, and (3) constructs the improvement in good faith." *Westenberger v. Atalig*, 3 N.M.I. 471, 476 (1993), (citing *Repeki v. MAC Homes*, No. 90-0002 (N.M.I. March 14, 1991)).

¶20 Appellants contend that their unjust enrichment claim should have survived summary judgment because they relied to their detriment on their permits and the government's lack of intervention, despite the open and notorious improvements made by appellants to the land. Appellants claim that equity requires that they be compensated for cleaning up and improving what used to be a dump site. The government counters that appellants' unjust enrichment claim fails as a matter of law because they cannot meet the requirements set forth above.

¶21 ■ We agree with the Superior Court that the meaning of "good faith" in this context is "an honest belief on the part of the occupant that he or she has secured a good title to the property in question, and that there are no adverse claims." Order at 4 (citing *Westenberger*, 3 N.M.I. at 477). Appellants did not present any evidence that would overcome the clear terms of their written permits with the government. In fact, appellants conceded that they have no interest in the public land and that they only occupied the land pursuant to temporary occupancy permits. Appellants only dispute the authority of DPL to enforce the terms of the permits. We have already concluded that DPL did have such authority. With no material facts in dispute, the Superior Court's denial of appellants' restitution claim was proper.

## CONCLUSION

¶22 For the reasons stated above, we hereby **AFFIRM** the Superior Court's September 9, 1997 order granting the government summary judgment.

