[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10110

_____

D.C. Docket No. 1:18-cv-22974-FAM

DIANE FISHER,

Plaintiff-Appellant,

versus

PNC BANK, N.A.,
PNC INVESTMENTS, LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 29, 2021)

Before MARTIN, GRANT, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

The question in this appeal is whether the district court properly dismissed

Diane Fisher's complaint under the probate exception to federal diversity

jurisdiction and for lack of standing. Fisher sued PNC Bank, N.A. and PNC Investments, LLC for mishandling an investment account that belonged to Fisher and her deceased mother. The district court *sua sponte* ordered briefing on the probate exception to federal diversity jurisdiction, concluded that Fisher was "attempting to circumvent the normal probate process by bringing an individual claim against PNC Bank," and dismissed the case. For similar reasons, the district court also held that Fisher had no standing to sue. After careful consideration and with the benefit of oral argument, we disagree with the district court on both issues. Because we conclude that neither the probate exception nor standing doctrine divests the district court of jurisdiction over this lawsuit, we reverse and remand for further proceedings.

## I. BACKGROUND

Because this case has not advanced beyond the pleading stage, we accept the factual allegations in Fisher's complaint as true and construe them in the light most favorable to her. *See Worthy v. City of Phenix City, Ala.*, 930 F.3d 1206, 1214–15 (11th Cir. 2019) (citing *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)).

Fisher and her mother, Rose Charlap, co-owned an investment account with the Royal Bank of Canada. Both women were account holders, and Fisher was the designated emergency contact on the account. Charlap contacted PNC about

2

securing a $100,000 loan to assist her son Alan. Alan had recently been convicted of fraud and theft, and Charlap wanted to give him some help to keep him out of jail. To arrange the $100,000 loan, Charlap transferred the RBC investment account to PNC. At the time of the transfer, Charlap was in poor mental and physical health, and she needed assistance managing the account.

Upon transferring her assets to PNC, Charlap notified the bank that the investment account included over $150,000 belonging to Fisher that had been entrusted to her. She instructed the bank that Fisher was to remain a co-owner and emergency contact on the investment account, just as she had been on the RBC account. Even though PNC representatives confirmed that Fisher would be on the account, PNC actually removed Fisher from the account without informing her or Charlap.

After transferring the RBC account to PNC, Charlap traveled to Florida to see her son Alan. Not long after Charlap's arrival, Alan put her in an assisted living facility in Fort Lauderdale. He took her to a local PNC branch and withdrew "thousands of dollars from her account," and increased the size of the loan with PNC from $100,000 to $125,000.

Around this time, PNC noticed some abnormal activity taking place on the investment account. Someone—presumably Alan—had purchased eleven boats and had requested new debit and credit cards. But PNC proceeded as if nothing was

amiss, thereby enabling Alan to continue misusing the investment account. PNC transferred the account from Charlap's home in Pittsburgh to Fort Lauderdale and sent Charlap's checkbook and bank records to Alan's home address. At one point, it authorized the sale of $155,000 worth of securities held in the investment account to pay off the $125,000 loan. Fisher later discovered during guardianship proceedings that a PNC bank teller had assisted Alan in withdrawing money from the investment account.

Alan continued to extract funds from the account until Charlap died. At that point, Fisher had lost "all of her investments that were part of Ms. Charlap's account with PNC." She had also incurred significant costs in an attempt to establish guardianship over her mother and regain control of the account.

Fisher filed a five-count complaint against PNC in the United States District Court for the Southern District of Florida that alleged (1) civil theft, (2) aiding and abetting civil theft, (3) negligence, (4) fraudulent concealment, and (5) aiding and abetting fraud. Complete diversity existed between the parties—Fisher is a citizen of New York and PNC is a citizen of Delaware. The district court *sua sponte* ordered Fisher to show cause why the case should not be dismissed for lack of subject matter jurisdiction under the probate exception to federal diversity jurisdiction. After both parties responded, the district court dismissed the case. The district court concluded that Fisher was "ultimately attempting to circumvent the normal probate process by

4

bringing an individual claim against PNC Bank." The district court also held that Charlap's sole ownership of the investment account at the time of her death meant that Fisher lacked standing to bring claims relating to the account. Fisher filed a motion for reconsideration that the district court denied. Fisher timely appealed.

## II. STANDARD OF REVIEW

We review a district court's dismissal for lack of subject matter jurisdiction *de novo*. *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1271 (11th Cir. 2021). When reviewing a dismissal order, "we must accept all facts in the complaint as true and view those facts in the light most favorable to the plaintiff." *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018).

## III. DISCUSSION

*A. The District Court Erred in Dismissing the Case under the Probate Exception*

The federal courts "have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). But, as with any rule, there are some exceptions. The relevant exception here is that a federal court may not exercise diversity jurisdiction over state probate matters. *See Mich. Tech Fund v. Century Nat'l Bank of Broward*, 680 F.2d 736, 739 (11th Cir. 1982). This "probate

exception" serves an important purpose. If federal courts routinely ruled on probate matters, then federal claimants could deprive competing state claimants of their share of an estate by obtaining "a premature distribution or valuation of estate assets" in federal court. *Turton v. Turton*, 644 F.2d 344, 347 (5th Cir. Unit A 1981). And nobody wants a probate system based on a race to a federal courthouse.

But the probate exception does not justify dismissing any case that might impact a decedent's estate. Instead, because of our unflagging obligation to exercise our jurisdiction, we must apply the probate exception narrowly. *See Glickstein v. Sun Bank/Miami, N.A.*, 922 F.2d 666, 672 (11th Cir. 1991), *abrogated on other grounds by Saxton v. ACF Indus., Inc.*, 254 F.3d 959 (11th Cir. 2001) (en banc); *see also Georges v. Glick*, 856 F.2d 971, 973 (7th Cir. 1988) ("The [probate] exception is created by the judiciary, not by Congress. Consequently, we must construe the exception narrowly."). Accordingly, the probate exception applies in only three circumstances. It "reserves to state probate courts [1] the probate or annulment of a will and [2] the administration of a decedent's estate[.]" *Marshall v. Marshall*, 547 U.S. 293, 311 (2006). It also bars federal courts from [3] "dispos[ing] of property that is in the custody of a state probate court." *Id.* at 312. Other than that, federal courts retain jurisdiction "to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate." *Id.* at 296 (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946)). *See also Mich. Tech Fund*, 680 F.2d at 741

6

(explaining that a main purpose of the probate exception is to preclude valuation of estate assets or the actual transfer of property under probate).

Fisher argues that the district court erred in dismissing her lawsuit because it can adjudicate her claims for damages against PNC without probating her mother's will, administering the estate, or disposing of the estate's property. We agree. Even if the district court were correct that Fisher filed this suit to "circumvent the normal probate process," a plaintiff's intent does not control the probate exception to federal jurisdiction. Instead, the question under this "most mysterious and esoteric branch[] of the law of federal jurisdiction" is what a lawsuit would require a district court to do. *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982). And Fisher's complaint does not require the district court to do any of the three things that the probate exception prohibits.

The district court's conclusion to the contrary was based on two main errors. First, the district court found that Fisher "does not allege . . . that PNC Bank stole or enabled the brother to steal *all* of the $150,000" that Fisher had in the investment account. (Emphasis added). But Fisher alleges that very fact. Her complaint states that she "has lost *all* of her investment that [was] part of Ms. Charlap's account with PNC" due to "PNC's direct involvement in Alan's scheme and refusal to take action to prevent such harm[.]" (Emphasis added). Second, the district court did not apply the Supreme Court's most recent decision in *Marshall*. The district court took as its

7

"lodestar" the Supreme Court's decision in *Markham v. Allen*, which instructed courts not to "interfere" with property in possession of a state probate court. 326 U.S. 490, 494 (1946). But in *Marshall*, the Supreme Court "acknowledged that th[is] oft-quoted language" is "not a model of clarity." *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 105–06 (2d Cir. 2007) (citing *Marshall*, 547 U.S. at 309–10). The Court clarified that a claim does not fall within the probate exception merely because it "raises questions which would ordinarily be decided by a probate court." *Marshall*, 547 U.S. at 304 (cleaned up). *See also Glickstein*, 922 F.2d at 672–73. Instead, it must fall into one of the three categories of the probate exception: probating a will, administering an estate, or disposing of property in custody of a probate court.

For its part, PNC argues that the district court will need to account for Fisher's share of Charlap's estate because, without such an accounting, it would be impossible to know how much her brother's actions harmed her. But this argument misunderstands Fisher's claims. Fisher alleges that she was harmed when PNC removed her as a co-owner of the investment account. The core of Fisher's case is that PNC knew that Fisher had invested money in the account and still unilaterally removed her from it. Because PNC's removal effectively dispossessed Fisher of her entire investment, no valuation of Charlap's remaining estate is needed. No allocation of estate assets is required because if Fisher were to prevail, damages would be paid by PNC as the defendant, not by her mother's estate. *See Breaux v.*

*Dilsaver*, 254 F.3d 533, 536–37 (5th Cir. 2001) (determining that jurisdiction existed where heirs sued certain estates' administrator and sought damages against the administrator personally for alleged fraud and breach of fiduciary duty which would be paid from his own property).

Moreover, Fisher is not asking the district court to dispose of property that is in the custody of a state probate court. Fisher wants damages from PNC directly for harms it allegedly caused before her mother's death. In fact, Fisher's position is that her lost funds were never properly subject to probate proceedings at all. According to her, Fisher lost control of her money when PNC removed her as titleholder and failed to prevent Alan from either siphoning those funds out of the account or using them to pay down the loan. If Fisher is correct, because those events occurred before Charlap's death, the funds at issue never became a part of Charlap's estate.

Finally, both the district court and PNC analogize this appeal to our unpublished decision in *Stuart v. Hatcher*, 757 F. App'x 807 (11th Cir. 2018). There, the plaintiff sued her brother in his capacity as the executor of their father's estate, alleging that his breach of duty reduced the value of both the estate and her interest. *See id.* at 809. We affirmed dismissal under the probate exception, holding that the lawsuit would require the district court to conduct a "premature valuation and accounting of the Estate" and the plaintiff's interest. *Id.* at 810. But we see very few parallels between this case and that unpublished precedent. Here, Fisher is not suing

9

an executor. She is suing PNC for its mismanagement of an investment account that she alleges she co-owned. And unlike the defendant in *Stuart*, PNC's alleged conduct and the harm that it caused occurred before the decedent died.

Instead of *Stuart*, we think the most factually analogous case is *Marshall* itself. There, as here, the plaintiff alleged that a third party had tortiously interfered with money she expected to receive from a recently deceased family member by, among other things, transferring the property against his wishes. *See Marshall*, 547 U.S. at 301. The Court reasoned that this kind of "widely recognized tort" claim "seeks an *in personam* judgment against" a third party without probating a will or disposing of probate property. *Id.* at 312. The Court recognized that "[t]rial courts, both federal and state, often address conduct of th[is] kind" and held that the probate exception did not apply. *Id.* So too here.

### B. Fisher is the Real Party in Interest and Has Standing to Bring Her Claims

PNC argues that Fisher is not the real party in interest and lacks standing because the estate now owns the account. We disagree. The real-party-in-interest requirement and Article III standing are two "distinct issues" with separate considerations. *Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 732 (6th Cir. 2016); *see also Martineau v. Wier*, 934 F.3d 385, 391–93 (4th Cir. 2019). Accordingly, even though the parties and the district court collapsed these issues, we address them separately.

First, Fisher is the real party in interest. Under Federal Rule of Civil Procedure 17(a)(1), "an action must be prosecuted in the name of the real party in interest." Were Fisher suing on behalf of Charlap's estate, she would be required to demonstrate her capacity to represent the estate under state law. *See Glickstein*, 922 F.2d at 670 (holding that whether a plaintiff may sue on behalf of an estate "is not a question of standing" but "whether [the plaintiff] has the capacity to bring [the] action on behalf of the estate"); Fed. R. Civ. P. 17(b)(3) ("Capacity to sue or be sued is determined . . . by the law of the state where the court is located[.]"). But, accepting the facts alleged in the complaint in the light most favorable to her, *Worthy*, 930 F.3d at 1214–15, Fisher is suing on her own behalf, not on behalf of Charlap's estate.

According to Fisher, the only reason the investment account was titled solely in Charlap's name at the time of her death is because PNC failed to retain Fisher as a co-owner. She alleges that Charlap instructed PNC that Fisher was to remain a named titleholder on the account after the account was transferred to PNC. Fisher further alleges that PNC representatives confirmed "both orally and in writing on numerous occasions" their understanding of those instructions. Fisher alleges that PNC wrongly removed her from the investment account and that this removal ultimately resulted in the loss of Fisher's $150,000. Fisher repeats this allegation under all five counts in the complaint, stating that PNC had "first-hand knowledge" that her money was in the account before "unilaterally remov[ing] her" in order to

11

facilitate the loan with Charlap. Thus, the action is being brought by the person "entitled to enforce the right." *Payroll Mgmt., Inc. v. Lexington Ins. Co.*, 815 F.3d 1293, 1299 n.10 (11th Cir. 2016) (quoting 6A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 1543 (3d ed. 1998)).

Second, Fisher has Article III standing. Fisher's standing depends on whether her allegations satisfy three elements: (1) injury in fact, (2) causation, and (3) redressability. *See Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1112–13 (11th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). We think they do. Fisher repeatedly alleges that PNC injured her because its conduct cost her the money in the account. As to causation: if PNC had retained Fisher as a co-owner, Fisher would not have lost access to her money and, upon Charlap's death, the investment account would have passed to Fisher as a joint tenant with right of survivorship. And the harms Fisher alleges are redressable in the form of an award of damages against PNC. Accordingly, Fisher has standing.

## IV. CONCLUSION

The dismissal of Fisher's complaint for lack of subject matter jurisdiction is reversed, and the case is remanded to the district court for further proceedings.

**REVERSED AND REMANDED.**