**E-FILED**
**CNMI SUPREME COURT**
E-filed: Apr 20 2023 01:50PM
Clerk Review: Apr 20 2023 01:52PM
Filing ID: 69857547
Case No.: 2022-SCC-0010-CIV
NoraV  Borja



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**IN THE MATTER OF THE ESTATE OF ROSA LISUA MOTEISOU,**

*Deceased.*

**Supreme Court No. 2022-SCC-0010-CIV**

---

**SLIP OPINION**

**Cite as: 2023 MP 3**

Decided April 20, 2023

---

CHIEF JUSTICE ALEXANDRO C. CASTRO
ASSOCIATE JUSTICE JOHN A. MANGLOÑA
ASSOCIATE JUSTICE PERRY B. INOS

---

Superior Court No. 22-0040-CV
Associate Judge Joseph N. Camacho, Presiding

---

INOS, J.:

¶ 1     Hermina Moteisou Mettao ("Mettao") appeals from an order appointing Appellee Rebecca White ("White") as the administrator of the estate of Rosa Lisua Moteisou ("Moteisou"). We find Commonwealth Rule of Probate Procedure 14 ("Rule 14") does not confer standing to any Commonwealth resident over 18 years old to initiate a probate of an intestate estate and hold a person must have a personal stake or interest in the estate to petition for letters of administration. We further hold that a petitioner without standing cannot substitute in a party with standing and hold that dismissal is the proper remedy.

¶ 2     We VACATE the order and REMAND with orders to dismiss.

## I. FACTS AND PROCEDURAL HISTORY

¶ 3     Moteisou borrowed money from the Northern Marianas Housing Corporation ("NMHC") to build her house, and she secured the loan with a real property mortgage. She died intestate, and a few years passed without her estate being probated. NMHC hired an attorney to probate the estate. Because the probate court had interpreted the probate rules to only allow natural persons, as opposed to corporations, to be administrators, the attorney used White to petition for letters of administration. White had no relationship to Moteisou or interest in the estate and was not NMHC's agent.

¶ 4     Mettao, one of Moteisou's children, saw the notice of hearing on the petition posted on a newspaper and objected to the appointment. She moved for dismissal because White lacked standing to initiate the probate. White agreed she lacked standing, but asked for leave to amend the petition to allow NMHC to substitute for her.

¶ 5     The court denied the motion to dismiss and granted the petition. It found Rule of Probate Procedure 14 conferred standing on White. The court further found that White had standing as an agent of NMHC. Mettao appeals.

## II. JURISDICTION

¶ 6     We have interlocutory appellate jurisdiction over "an order granting or revoking letters testamentary or of administration." 8 CMC § 2206.

## III. STANDARD OF REVIEW

¶ 7     Whether White was NMHC's agent is a "mixed question of law and fact." *City & County of Denver v. Fey Concert Co.*, 960 P.2d 657, 670 (Colo. 1998); *see also Agulto v. Northern Marianas Investment Group, Ltd.*, 4 NMI 7, 10 (1993). "The existence of an agency relationship is generally a question of fact," but becomes a question of law when "the material facts from which it is to be inferred are not in dispute." *Repeki v. Mac Homes (Saipan) Co., Ltd.*, 2 NMI 33, 50–51 (1991). We review questions of fact for clear error. *Commonwealth v. Kaipat*, 2022 MP 9 ¶ 14. We review de novo questions of law such as whether Rule of Probate Procedure 14 confers standing. *Atalig v. Mobil Oil Marianas, Inc.*, 2013 MP 11 ¶ 9; *In re Commonwealth*, 2022 MP 5 ¶ 8.

**IV. DISCUSSION**

¶ 8     Mettao asserts that White lacks standing because she has no interest in the probate and that the proper remedy is dismissal. White has changed her position on whether she has standing. In the trial court, she conceded an absence of standing, but on appeal contends she has standing through Rule 14. White additionally argues that if we find otherwise, we should allow the petition to be amended and substitute NMHC as the petitioner.

*A. Whether White was NMHC's Agent*

¶ 9     Before the trial court, White never explicitly stated or claimed she was acting as NMHC's agent. Nonetheless, the court found she was NMHC's agent. Appendix to Appellant's Br. at 31. In her opening brief, she said nothing about agency. At oral argument, she took a different stance. White claimed to be NMHC's agent but admitted the record does not reflect this. Because the record does not support the new claim and the facts "are not in dispute," we hold the court erred as a matter of law in finding that White was NMHC's agent. *Repeki v. Mac Homes (Saipan) Co., Ltd.*, 2 NMI 33, 50–51 (1991). Because she is not an agent, she is not a fiduciary representing an interested person. *See id.* at 49 (holding that agents are fiduciaries); 8 CMC § 2107(p) (providing that an "interested person" for purposes of the probate code includes "fiduciaries representing interested persons").

*B. Standing Requirement*

¶ 10     Standing is "a concept utilized to determine if a party is sufficiently affected so as to [e]nsure that a justiciable controversy is presented to the court." *Commonwealth v. Anglo*, 1999 MP 6 ¶ 8. The NMI Constitution requires litigants to have standing. *See Atalig v. Mobil Oil Mariana Islands, Inc.*, 2013 MP 11 ¶ 10; *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (explaining constitutional standing in federal court is required by Article III's limitation of the judicial power to resolving 'Cases' and 'Controversies' and the separation-of-powers principles underlying that limitation); *Joeten Motors Co., Inc. v. Leon Guerrero*, 2020 MP 14 ¶ 15 (explaining how there must be a "case or controversy" for the court to act). NMI CONST. art. IV, § 2. Consequently, if the litigant lacks standing, the court lacks subject matter jurisdiction to hear them. *See Mafnas v. Commonwealth*, 2 NMI 248, 256 (1991); *Commonwealth v. Anglo*, 1999 MP 6 ¶ 3; *Atalig v. Mobil Oil Marianas, Inc.*, 2013 MP 11 ¶ 10; *Blanco-Maratita v. Borja*, 2017 MP 6 ¶ 14 ("The issue of standing is a jurisdictional question"); *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 119 (Conn. 2001) ("It is axiomatic that a party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim.").

¶ 11     The basic standing requirements are that a litigant:

> (1) must have suffered an injury in fact—an invasion of a legally protected interest which is a) concrete and particularized, and b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct

complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative that the injury will be redressed by a favorable decision.
*Estate of Ogumoro v. Han Yoon Ko*, 2011 MP 11 ¶ 19 (internal quotation and citation omitted).

¶ 12    Courts describe these requirements taken together to mean that a litigant must have an interest in the case to have standing. *Falcon v. McCue*, 2005 MP 7 ¶ 31 n.8; *PFC v. Sablan*, 2011 MP 19 ¶ 24.

¶ 13    Our probate decisions have addressed the standing of claimants and objectors, and have required "an interest, even a speculative one, that could be affected by the outcome of the case." *In re Estate of Maria Mangabao*, 2019 MP 13 ¶ 10; *see also In re Estate of Tudela*, 3 NMI 316, 318 (1992) (holding presumptive heirs had standing to challenge an order finding they were not heirs because "they may have pecuniary and property interest[s] that will be affected by the outcome of this case"); *Malite v. Superior Court*, 2007 MP 3 ¶ 35 (holding vested heirs clearly had standing to challenge an award of attorney fees under *Tudela*'s reasoning because "[a] vested interest [is] stronger than a speculative one"); *In re Estate of Pangelinan*, 2020 MP 19 ¶ 10 (holding appellant lacked standing to object to the determination of heirship because under his theory of the case, he was "not an heir with even a speculative interest"). The Probate Code specifies who may have an interest in an estate:

> "Interested person" includes heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or claim against the estate of a decedent which may be affected by the proceeding. It also includes persons having priority for appointment as personal representative, and other fiduciaries representing interested persons. The meaning as it relates to particular persons may vary from time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding. 8 CMC § 2107(p).

The requirement of having an interest clearly applies in this case. Therefore, we hold that a petitioner for letters of administration must be an interested person to have standing.

### C. Whether Rule 14 Grants Standing

¶ 14    Rule 14 provides who may petition for letters of administration. It reads in its entirety "Any person who is a resident of the Commonwealth and over 18 years of age may petition for Letters of Administration." COM. R. PRO. P. 14. The court, applying the basic canon of construction that language should be given its plain meaning, found that White met these requirements as a Commonwealth resident over the age of 18. *See In re Estate of Roberto*, 2002 MP 23 ¶ 21. The rule does not explicitly limit petitioners to interested parties.

We will not, however, apply a plain meaning interpretation when there is evidence that a contrary meaning was intended or if the interpretation defies common sense or leads to absurd results. *In the Matter of a Petition for Certified Question*, 2020 MP 2 ¶ 13. Rule 14 is a court rule, and we can best interpret our rules. *Citizens' Natural Gas Co. v. Waynesburg Natural Gas Co.* 59 A. 822, 822 (Pa. 1904) (holding "[a] court without doubt is the best interpreter of its own rules and its constructions of them ought to be authoritative.").

¶ 15    Mettao argues that Rule 14 concerns not standing but a different concept—capacity. The New York Court of Appeals has explained the distinction:

> "Standing" is an element of the larger question of "justiciability" . . . The various tests that have been devised to determine standing are designed to ensure that the party seeking relief has a sufficiently cognizable stake in the outcome so as to "cast[] the dispute 'in a form traditionally capable of judicial resolution'" . . . "Capacity," in contrast, concerns a litigant's power to appear and bring its grievance before the court. The concept of a lack of capacity, which has also occasionally been intermingled with the analytically distinct concept of a failure to state a cause of action, does not admit of precise or comprehensive definition . . . Capacity, or the lack thereof, sometimes depends purely upon a litigant's status. A natural person's status as an infant, an adjudicated incompetent or, formerly, a felony prisoner, for example, could disqualify that individual from seeking relief in court."
> *Cmty. Bd. 7 v. Schaffer*, 639 N.E.2d 1, 2 (N.Y. 1994) (internal citations omitted).

¶ 16    We agree that Rule 14 concerns capacity rather than standing. First, a plain meaning interpretation would overrule a number of our holdings that litigants require an interest, even a speculative one, that could be affected by the outcome of the case. *In re Estate of Maria Mangabao*, 2019 MP 13 ¶ 10. "Under the doctrine of stare decisis, we afford a presumption that previous decisions should be followed." *Castro v. Telesource CNMI, Inc.*, 2022 MP 7 ¶ 9. None of the factors we use when deciding to overrule precedent support overturning.[1] Our prior decisions applied the constitutional requirement of standing, which 8 CMC § 2107(p) grants. Overruling prior opinions would be proper only if there was a change in the statute, but there has been none.

¶ 17    Second, a plain meaning interpretation would render the "personal interest" requirement in 8 CMC § 2107(p) meaningless and lead to an absurd

---

[1]    "These factors include the quality of the precedent's reasoning, the precedent's consistency and coherence with earlier or subsequent decisions, changed law since the prior decision, changed facts since the prior decision, the workability of the precedent, and reliance interests on the precedent." *Castro v. Telesource CNMI, Inc.*, 2022 MP 7 ¶ 9.

result. The probate code was enacted in 1984.[2] The Commonwealth Rules of Probate Procedure were promulgated later in time, in 1996. Rule of Probate Procedure 1 specifically instructs that the probate rules "are to be used in conjunction with the Code." This is consistent with our explanation in *Commonwealth v. Camacho*, 2002 MP 14 ¶ 20 that we interpret procedural rules *in pari materia* with the relevant statutes and make all attempts to harmonize them. "[Q]uestions of dominance between the judiciary's rules and the legislature's statutes only occurs when a statute directly and irreconcilably conflicts with a rule of this court on a matter within the court's authority." *Id.* at ¶ 19. No such conflict exists here; an interpretation of Rule 14 as overruling 8 CMC § 2107(p) would ignore the clear command to harmonize the probate rules with the probate code.

¶ 18    Third, a plain reading of Rule 14 does not ensure someone has a cognizable stake in a probate outcome as constitutionally required. The mere fact that someone is a certain age and is a resident in a certain location does not grant them an interest in a case. If Rule 14 determined who had standing, then a minor child of a decedent would have no standing. That interpretation defies common sense and reaches an absurd result. Age and residence concern a person's status to bring a grievance before the court. To illustrate the point, a decedent's minor child clearly has standing as an heir under 8 CMC § 2107(p), but would lack capacity under Rule 14 to initiate a probate. Instead, a duly appointed guardian ad litem that meets the age and residence requirements that Rule 14 imposes would have to start the probate on behalf of the minor child.

¶ 19    Courts try to interpret statutes and rules in a way to make them comport with the Constitution. "In testing the constitutionality of a statute, the language must receive a construction that will conform it to a constitutional limitation, if it is susceptible of such an interpretation." *In the Matter of Seman*, 3 NMI 57, 73 (1992); *see also Reyes v. Reyes*, 2004 MP 1 ¶ 88. We are not persuaded that Rule 14 intended to remove the constitutional requirement of having an interest. Rule 14 conforms with the NMI Constitution by us interpreting it to grant capacity instead of standing.

¶ 20    Article IV, Section 9 of the NMI Constitution gives this Court the authority to propose court rules. Our rules must first receive legislative approval, and so we have stated they have "the status of statutes." *Commonwealth v. Camacho*, 2002 MP 14 ¶ 17. However, conferring standing to every Commonwealth resident over the age of 18, without requiring that they have an interest, would be beyond our power. Statutory standing may be created by establishing a new type of injury which fulfills the constitutional standing requirement. In doing so, however, the requirement of an injury cannot be waived. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (rejecting "the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right . . . Article III standing requires a concrete injury even in the

---

[2]    *See* Northern Marianas Probate Law, PL 3-106.

context of a statutory violation.") (internal quotation and citation omitted). In probate, Section 2107(p) specifies who has a stake—neither the legislature nor the Court, through Rule 14, can grant standing to people without an interest in the estate. Doing so would violate Article 4, Section 2 of the NMI Constitution.

¶ 21     We hold that Rule 14 is about capacity of natural persons, not standing. Only an interested person can petition for letters of administration. Corporations are considered people under the probate code. 8 CMC § 2107(t) provides that "person" includes "an individual, a corporation, an organization, or other legal entity. The requirement of being an interested person does not apply to the administrator themselves. That is, while only an interested person can petition under Rule 14, they can ask the court to appoint a non-interested person to be the administrator.

### D. Dismiss or Leave to Amend

¶ 22     Next, we address whether to dismiss the Petition or allow a third party to substitute into the case. As discussed above, standing is a jurisdictional issue. *See, e.g., Mafnas v. Commonwealth*, 2 NMI 248, 256 (1991).

¶ 23     There is little support for allowing amendments in the absence of standing. The only authority White cites is NMI Rule of Civil Procedure 1, which states that the Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Because standing is a constitutional requirement for courts to have jurisdiction, however favorable to judicial economy permitting amendment would be, "judicial economy cannot supply jurisdiction." *In re Care & Treatment of Emerson*, 392 P.3d 82, 88 (Kan. 2017); s*ee also Burns v. Waller Thomas Burns II & Theo W. Pinson*, 2 S.W.3d 339, 345 n.6 (Tex. App. 1999) ("judicial economy cannot confer subject matter jurisdiction."); *Gilliam v. State*, 860 S.E.2d 543, 545 (Ga. 2021) (acknowledging that a line of cases where the Georgia Supreme Court had exercised jurisdiction in the name of judicial economy "was not rightly decided.").

¶ 24     NMI Rule of Civil Procedure Rule 15(a)(2) permits amendments to pleadings with court leave, which courts freely grant when justice so requires. However, amendments may be denied for reasons such as undue delay, bad faith, dilatory motive, prejudice to the opposing party if amendment was allowed, or futility of amendment. *Commonwealth v. Superior Court*, 2008 MP 11 ¶ 14; *Foman v. Davis*, 371 U.S. 178, 182 (1962).

¶ 25     An amended complaint's allegations can "be considered in evaluating whether there was standing at the time the case was originally filed." *In re Zappos.com, Inc.*, 888 F.3d 1020, 1028 n.10 (9th Cir. 2018); *see also ThermoLife Int'l L.L.C. v. Neo Genis Labs, Inc.*, 411 F. Supp. 3d 486, 496 (D. Ariz. 2019) (explaining the effect of an amended complaint). That is, "the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008). Amendments can demonstrate the litigant has standing on a different

basis than originally alleged. The Ninth Circuit in *United Union of Roofers, etc. No. 40 v. Insurance Corp. of America*, 919 F.2d 1398, 1403 (9th Cir. 1990), held that a union lacked associational standing to seek monetary relief on behalf of its members, but let the union amend its complaint in order to show "an independent rather than associational basis for standing."

¶ 26    Courts have also permitted amendments to add new parties in order to cure standing issues as long as the original litigant had standing for other claims. In *Neese v. Lithia Chrysler Jeep of Anchorage, Inc*., 210 P.3d 1213, 1219–24 (Alaska 2009), the Alaska Supreme Court held that in a class action complaint, plaintiffs who had no standing against two of the defendants in a multi-defendant case should be permitted to amend their complaint to add additional members who had standing against those two defendants to avoid piecemeal appeals. Similarly, in *Triumvirate, LLC v. Zinke*, No. 3:18-cv-0091-HRH, 2018 U.S. Dist. LEXIS 97134, at *3 (D. Alaska June 8, 2018), the court allowed the plaintiff to amend his complaint to add new plaintiffs with standing under one environmental law because the plaintiff did have standing under a different environmental law. *Id.* at *9–10. It explained "[b]ecause the court has jurisdiction over plaintiff's [other] claims, this case is 'much different from those in which [courts] have disallowed amendment because jurisdiction was lacking over the entire case from its inception.'" *Id.* at *10 (quoting *Cotton v. Certain Underwriters at Lloyd's of London*, 831 F.3d 592, 595 (5th Cir. 2016)).

¶ 27    Other jurisdictions also hold that litigants without standing generally cannot amend their pleading. The Eleventh Circuit has held "[w]here a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action." *Wright v. Dougherty County*, 358 F.3d 1352, 1356 (11th Cir. 2004) (quoting *Summit Office Park, Inc. v. United States Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981)). Similarly, the Sixth Circuit has held that when the plaintiff "admittedly has not suffered injury in fact by the defendants, it had no standing to bring this action and no standing to make a motion to substitute the real party in interest." *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002). *See also DW Aina Le'a Dev., LLC v. Land Use Comm'n*, No. 17-00113 SOM-WRP, 2022 U.S. Dist. LEXIS 93652, at *51–53 (D. Haw. May 25, 2022) (denying the plaintiff's motion to amend the complaint because they lacked standing at the outset of the case); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022–23 (9th Cir. 2003) (dismissing a class action where the sole named plaintiff lacked standing); *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 893 (2d Cir. 1983) ("The longstanding and clear rule is that if jurisdiction is lacking at the commencement of [a] suit, it cannot be aided by the intervention of a [plaintiff] with a sufficient claim.") (internal quotation marks omitted); *Wash. Tennis & Educ. Found. Inc. v. Clark Nexsen, Inc.*, 270 F. Supp. 3d 158, 166 (D.D.C. 2017) ("when subject matter jurisdiction is wanting because the plaintiff presently named in the complaint lacks standing, a court cannot grant leave to amend under Rule 15 to add a plaintiff for purposes of curing the jurisdictional defect."). In short, "standing—where it would have been necessary

to bring the claim in the [trial] court—cannot be created retroactively." *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 483 n.6 (9th Cir. 2011). Therefore, when a pleading fails to establish the litigant's standing and cannot be amended to show they had standing at the case's outset, amendment is futile, and the court lacks jurisdiction.

¶ 28    One other rule appears at first glance to support White's request to substitute in NMHC, which is the real party in interest. Rule of Civil Procedure 17(a)(3) specifies that actions should not be dismissed for failure to prosecute in the name of the real party in interest until "reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." However, "The real-party-in-interest requirement and Article III standing are two distinct issues with separate considerations." *Fisher v. PNC Bank*, *N.A.*, 2 F.4th 1352, 1358 (11th Cir. 2021); (internal quotation and citation omitted); *see also Cranpark, Inc. v. Rogers Group, Inc*., 821 F.3d 723, 732 (6th Cir. 2016) ("Lawyers, and courts, often fail to distinguish between these two distinct issues . . . A plaintiff may have standing in the Article III sense but not be the real party in interest."). For example, when someone declares bankruptcy, they do not lose standing for any causes of action they had; instead, the bankruptcy trustee becomes the real party in interest for any suits on those causes of action. *See Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004); *Martineau v. Wier*, 934 F.3d 385, 391 (4th Cir. 2019). "[C]ourts must assure themselves of Article III standing at the outset of the litigation . . . But there is no analogous rule for the real-party-in-interest requirement." *Id.* at 392 (internal quotation and citation omitted). That is, in order for Rule 17(a)(3) to apply, the original litigant must have standing. *See Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 532 (6th Cir. 2002) ("[Rule 17(a)(3)] must be read with the limitation that a [trial] court must, at a minimum arguably have subject matter jurisdiction over the original claims."

¶ 29    Here, unlike in *Neese* and *Triumvirate*, White has no other claim for which she has standing. 210 P.3d at 1219–20; 2018 U.S. Dist. LEXIS 97134. She cannot amend her petition to demonstrate she had standing when she first filed it, indicating that amendment would be futile. *Commonwealth v. Superior Court*, 2008 MP 11 ¶ 14; *Wright v. Dougherty Cnty.*, 358 F.3d 1352, 1356 (11th Cir. 2004); *Summit Office Park, Inc. v. United States Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981). Courts vacate the judgment below and remand with instructions to dismiss when the litigant lacks standing. *See Hawaii's Thousand Friends v. Anderson*, 768 P.2d 1293, 1301 (Haw. 1989); *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 944 (9th Cir. 2011); *California v. Texas*, 141 S. Ct. 2104 (2021). We agree with these cases and hold that dismissing the petition is the remedy when the petitioner lacks standing to initiate probate.

## V. CONCLUSION

¶ 30    For the reasons stated above, we find Rule 14 does not confer standing in probate proceedings. We VACATE the order appointing White as administrator and REMAND with orders to dismiss for lack of jurisdiction.

SO ORDERED this 20th day of April, 2023.


/s/
ALEXANDRO C. CASTRO
Chief Justice


/s/
JOHN A. MANGLOÑA
Associate Justice


/s/
PERRY B. INOS
Associate Justice

COUNSEL

Jane Mack, Saipan, MP, for Appellant.

Michael A. White, Saipan, MP, for Appellee


NOTICE

This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In the event of discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, fax (670) 236–9702, e–mail Supreme.Court@NMIJudiciary.gov.